[No. C048887. Third Dist. Jan. 3, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
JAKE J. PHILLIPS, Defendant and Appellant.

## COUNSEL

William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Jesse N. Witt, and David Andrew Eldridge, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HULL, J.**—A jury convicted defendant Jake J. Phillips of first degree burglary (Pen. Code, §§ 459, 460, subd. (a)—count one; further undesignated section references are to the Penal Code), two counts of first degree robbery (§§ 211, 212.5, subd. (a)—counts two & four), carjacking (§ 215—count three), vehicle taking (Veh. Code, § 10851, subd. (a)—count five), receiving stolen property (§ 496, subd. (a)—count six), and false imprisonment (§ 236—count seven). The jury found that defendant personally used a knife in the commission of counts one through four and seven. (§ 12022, subd (b)(1).) He was sentenced to state prison for an aggregate unstayed term of 11 years 8 months.

On appeal, defendant contends the trial court erred by denying his *Faretta* motion. (*Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].) We affirm the judgment.

### FACTS

Given the single issue defendant raises on appeal, we need only recount the facts relating to defendant's *Faretta* motion.

At the outset of proceedings on November 8, 2004, more than a month before trial, defendant's trial counsel asked the court to hear defendant's *Marsden* motion. (*People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].)

Thereafter, the court conducted an in camera proceeding in order to inquire into defendant's apparent dissatisfaction with his appointed attorney. Defendant, in a somewhat caliginous mood, complained he was not aware of the charges brought against him in multiple actions, that he had not received "one piece of paperwork," and that his attorney was not trying to help him. Ultimately, he also expressed frustration over the conditions of his pretrial confinement both locally and at High Desert State Prison. The trial judge, in an admirably patient way, discussed the matters with defendant and his counsel in an effort to determine what defendant's wishes were concerning his representation.

At one point during the trial court's inquiry into the basis for defendant's *Marsden* motion, defendant, after stating his view that he had a right to the papers and files relevant to the cases then pending against him, said, "If they're my files, I should be able to take these. This man [trial counsel] said these are mine. I would like to take them. *Because I feel maybe I should represent myself,* because this man has no desire or willing [*sic*] to represent me, sir. He says these are my files. I would like to take them with me." (Italics added.) Later in the discussion, defendant, referring to his attorney said, "If he wants to try this case, this is a serious case. And—I mean, this ain't a joke. And my custody status is not a joke. And, you know, I feel that maybe I could do better myself, and that's not even good."

Appropriately, at this point, the court turned the discussion toward defendant's right to self-representation and advised defendant he had a constitutional right to represent himself. The court went on to add, "Before I would be willing to let you represent yourself, we would need to hold a hearing, where I would ask you questions about your understanding of the charges against you, about your understanding of the law, about your understanding of the Rules of Evidence, to try to determine that you could do a decent job in representing yourself so that you don't get yourself into worse trouble than what you are already. [¶] Do you think you want to go through that kind of hearing?" Defendant responded, "I believe, sir—yeah, I believe I would much rather take the chance to represent myself than a man who really don't give a damn trying to represent me."

The court took a brief recess to find a book it needed and the discussion continued: "THE COURT: Okay. And you may have noticed, or you may not have, we call this a *Faretta* hearing. When lawyers and Judges do things, they often refer to proceedings, things that go on or Rules of Court, that are decided by a Supreme Court decision, and then we give them the name of that case. Faretta was a defendant who wished to represent himself.

"So in a *Faretta* hearing, I need to ask you these questions: First of all, I need to be sure that your request to represent yourself is really and truly what

you want to do, as opposed to wishing to have another attorney and not thinking maybe that you can get rid of [defendant's attorney] by this motion.

"Do you really want to represent yourself, no matter who your attorney might be?

"THE DEFENDANT: Yeah. Yeah, I would. It would be the best thing if I could represent myself properly.

"THE COURT: Okay. I think that's an unequivocal request to represent yourself.

"And the next question would be: Why don't you want me to keep [defendant's attorney] as your attorney or if he should be removed for reasons that you would tell me later on, appoint another attorney for you? Why do you think that I should not—

"THE DEFENDANT: We could try with another attorney. . . .

"THE COURT: Okay. But do I understand you correctly; are you saying to me that if you could have a particular attorney or somebody in whom you could have or develop some confidence, you would rather be represented by an attorney?

"THE DEFENDANT: Yeah, if I had some confidence, yeah. I believe—I don't think I'm going to find the confidence. I would like to have confidence in somebody, whether it's an attorney or somebody. I have no confidence. I feel very alone right now. And I do have a legitimate case here. And I know somewhat [sic] about the law that [defendant's attorney] isn't helping me, you know."

Understandably uncertain about defendant's wishes, the court continued the conversation comparing the situation of a defendant who could afford to hire an attorney with one who could not. The court then asked whether, if the court were able to find an attorney who would take the case and adequately represent defendant, he would accept that attorney and defendant replied, "Yeah, until they prove that they couldn't represent—that—I mean, they have to do something. If he was doing something, I would have confidence in him. And, you know, I wouldn't be going through this right now."

The judge then said he had changed his mind and now found that there was not an unequivocal request for self-representation. The following exchange occurred:

"THE COURT: . . . I think you're telling me that if I can find you a lawyer with whom you can get along and in whom you would have some confidence, you would accept the lawyer?

"Is that correct?

"THE DEFENDANT: Yes, sir."

The court then returned to the adequacy of defendant's attorney's representation. His attorney explained all that he had done up to that time and the reasons why there were other things he had not done. The trial court told defendant that the court was familiar with defendant's attorney and that defendant's attorney was always prepared and "a very good attorney." Ultimately, the trial judge told defendant that if defendant said he did not believe he could work with his attorney and that he had no confidence in him or ability to communicate with him, the court would grant his motion for new counsel. At the conclusion of the hearing, defendant said he would continue with the attorney he had.

## DISCUSSION

Defendant contends the trial court erred by denying his *Faretta* motion after finding that he made an unequivocal request to represent himself. We seriously question whether defendant ever did in fact make an unequivocal request to represent himself. But the trial court at one point found that he did and we will respect that finding. In any event, defendant's is a difficult argument to carry off in light of the fact that defendant, by the end of the hearing we have detailed *above*, not only withdrew his request to represent himself (if, indeed, he had made one) but also agreed it was in his best interests to continue with the attorney he had. Arguably, he waived his *Faretta* claim in this appeal by agreeing to representation by his appointed counsel.

Defendant attempts to avoid the consequences of agreeing to representation by suggesting that his acquiescence in counsel was somehow coerced or unlawfully affected by a flawed *Faretta* hearing. Specifically, he claims the court erred by (1) conditioning his request upon his possession of legal knowledge, (2) changing its initial ruling that his request was unequivocal, and (3) tying his *Faretta* motion to the *Marsden* hearing. Considering these points in turn, we find no error.

I

*Conditioning the Request on Legal Knowledge*

■ "*Faretta* holds that the Sixth Amendment grants an accused personally the right to present a defense and thus to represent himself upon a timely and unequivocal request. [Citation.] The right to self-representation . . . may be asserted by any defendant competent to stand trial—one's technical legal knowledge, as such, being irrelevant to the question whether he knowingly and voluntarily exercises the right [citations]. The right to representation by counsel persists until a defendant affirmatively waives it, and courts indulge every reasonable inference against such waiver. [Citation.]" (*People v. Dunkle* (2005) 36 Cal.4th 861, 908 [32 Cal.Rptr.3d 23, 116 P.3d 494].)

■ Faced with an unequivocal request for self-representation, the trial court must determine whether the defendant is competent to waive his right to counsel, that is, whether he has the ability to understand the proceedings in which he has asked to represent himself and whether he understands the dangers and disadvantages of self-representation. (*People v. Welch* (1999) 20 Cal.4th 701, 733 [85 Cal.Rptr.2d 203, 976 P.2d 754].) In order to decide the latter, the trial court must discuss with the defendant the consequences of his decision. He should at least be advised that: self-representation is almost always unwise and that the defense he conducts might be to his detriment; he will have to follow the same rules that govern attorneys; the prosecution will be represented by experienced, professional counsel who will have a significant advantage over him in terms of skill, training, education, experience, and ability; the court may terminate his right to represent himself if he engages in disruptive conduct; and he will lose the right to appeal his case on the grounds of ineffective assistance of counsel. (*People v. Lopez* (1977) 71 Cal.App.3d 568, 572–574 [138 Cal.Rptr. 36].) In addition, he should also be told he will receive no help or special treatment from the court and that he does not have a right to standby, advisory, or cocounsel. (*People v. Noriega* (1997) 59 Cal.App.4th 311, 319–322 [69 Cal.Rptr.2d 127].)

While this list of issues is not exhaustive, it demonstrates that there are a number of matters the court must ask about and consider before ruling on a defendant's request to represent himself.

Defendant complains the trial court erred when it said, before the court would be willing to let defendant represent himself, the court would hold a hearing wherein the court would ask defendant about his understanding of the charges against him, his understanding of the law, and his understanding of the rules of evidence to determine whether he could do a "decent job" representing himself. Defendant argues that the court was, in effect, saying it

would only allow defendant to represent himself if defendant was competent to serve as counsel in a criminal case. We do not read the court's comments that way.

As we have previously noted, the trial court is obligated to make an inquiry into defendant's understanding of the nature and seriousness of the charges against him and his understanding of the law in order for the court to decide whether defendant understands the risks and disadvantages of representing himself. The comments defendant complains of were nothing more than those of a careful judge trying patiently to explain the *Faretta* procedure to a defendant. There is nothing in these comments to suggest the judge would not have allowed defendant to represent himself if the *Faretta* hearing had gone forward only if the judge found that defendant was "competent to serve as counsel in a criminal case." There was no error.

## II

### *The "Unequivocal" Demand for Self-representation*

■ We are somewhat puzzled by this argument. It is correct that at one point early in the hearing, the trial court found defendant's demand for representation unequivocal at which point the court initiated the proper inquiry into defendant's request. During the course of that inquiry, it became apparent that defendant's request was equivocal, to the point where he effectively withdrew it when he agreed to continue with appointed counsel. Defendant's argument appears to be that once the court found defendant's request unequivocal, it was bound to grant defendant's request without further discussion. As we have seen *above*, that is not the law, because an unequivocal request only triggers the inquiry into whether the defendant is competent to make the request and whether he understands the risks and disadvantages attendant to self-representation. There is nothing in the law that suggests once a trial court hears what it thinks is an unequivocal request for self-representation, it cannot later decide the request is equivocal as the *Faretta* hearing proceeds. We discern no error.

## III

### *The Marsden Hearing*

Finally, defendant argues the court "improperly conducted a *Marsden* hearing in determining [defendant's] *Faretta* motion." Again, we find no error.

The essence of defendant's argument is that once the court undertook the *Faretta* inquiry, it was error to discuss the suitability of appointed counsel until the *Faretta* request had been decided.

In this matter, the trial court was faced with a defendant who was unclear on what he wanted other than he wanted something more from his attorney than he thought he was getting. The discussion between the court and defendant meandered between defendant perhaps opting to represent himself if he could not have another lawyer and defendant's reasons for not liking the one he had. The trial court was courteous and fair in its efforts to understand and inquire into defendant's complaints and wishes concerning representation and understandably followed defendant's lead as defendant's comments suggested, variously, a request to represent himself and a request for new appointed counsel.

■ To the extent defendant complains that the court improperly inquired into defendant's dissatisfaction with his attorney at the beginning of the court's *Faretta* inquiry, we see no harm in that. Reasonably, the court could have thought, in order to determine that defendant was making a knowing and voluntary request to represent himself, his points of dissatisfaction with his own attorney were relevant. An airing of defendant's complaints about his appointed counsel could well have (and apparently did) demonstrate that defendant in fact did not want to represent himself but preferred instead to proceed with counsel. There was no error in this proceeding.

DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Davis, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 12, 2006, S140853. Werdegar, J., did not participate therein.