Filed 7/30/13  P. v. Frazier CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>KEVIN MERCK FRAZIER,<br><br>          Defendant and Appellant. | A134256<br><br>(Solano County<br>Super. Ct. No. FCR262373) |

Defendant Kevin Frazier was convicted by a jury of forgery (Pen. Code, § 470, subd. (a)),[1] filing a forged instrument (§ 115, subd. (a)), and grand theft (§§ 484, 487, subd. (a)).  He appeals on the ground he was denied his constitutional right of self-representation.  We conclude defendant's constitutional right was not abridged, and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Because this appeal concerns only whether the trial court properly refused to allow defendant to represent himself under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*), we recite only facts related to this question.  (*People v. Phillips* (2006) 135 Cal.App.4th 422, 424 ["Given the single issue defendant raises on appeal, we need only recount the facts relating to defendant's *Faretta* motion."].)

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

*First Request for Self-Representation Is Granted*

Defendant and several codefendants were indicted by the Solano County grand jury on 17 counts. Defendant ultimately faced four counts (original counts 3, 5, 6, and 13)[2] of forgery (§ 470, subd. (a)), two counts (original counts 4 and 7) of filing a forged instrument (§ 115, subd. (a)), and one count (original count 14) of grand theft (§§ 484, 487, subd. (a)).

On September 29, 2009, defendant and his codefendants appeared before Judge Stashyn for a *Faretta* hearing. Defendant had completed a written waiver of his right to counsel and asked to represent himself. On questioning and advisement by the court about waiving counsel and the perils of self-representation, defendant spoke of "overstanding" (rather than understanding) the court's admonishments. This led to an exchange with the court in which defendant stated the term "understand" was "copy written." The court reprimanded defendant for playing word games. Defendant also made other peculiar statements: he claimed the "Universal" Commercial Code was applicable to his case, stated he was present to "settle" his case, asked the court if he was being addressed as a "flesh in blood man" or as a "corporate fiction," and asked the court "to render unto me my occlusive number and the bid bonds."

The prosecutor and counsel for another defendant expressed concerns about defendant proceeding without an attorney, but the trial court nevertheless allowed defendant to represent himself after he stated he understood what was at stake and took the proceedings seriously. The court warned defendant, however:

> "[I]f you do represent yourself we are not going to be able to have these long protracted debated discussions every hearing and on every particular issue. [¶] If you are going to represent yourself you have to use the same procedures and use the same language as everybody else."

---

[2] The trial court later renumbered the counts after severing original counts 1 and 2, for theft from an elder or dependent (§ 368, subd. (d)). Original counts 1 and 2 were dismissed at sentencing.

2

*First Self-Representation Revoked*

A month later, on October 26, 2009, defendant appeared without an attorney before Judge Stashyn. The court instructed him to "come forward." Defendant responded: "I have a question before I enter the court. I have a statement to make before I enter the court." The court warned defendant, "[i]f you're not going to follow the rules, then we're going to have to get you a lawyer. . . . Come forward." After a back-and-forth with the court in which defendant again queried if he was being addressed as a person or entity, defendant came forward and stated his appearance: "I am the authorized representative, and the attorney, in fact, for the trust. I am the beneficiary in the process and the creditor." The trial court questioned defendant's competence and stated defendant was "too disruptive." It noted the *Faretta* hearing in September had not been "smooth," and defendant was "continuing on with [his] refusal to follow through with court decorum" and "courtroom procedures." The court could "only conclude that you're trying to disrupt court, and the Court is not going to tolerate behavior that's going to impact your case or any other defendant's cases." It found defendant was "playing games," revoked his self-represented status, and appointed new counsel. Defendant protested he was competent and could follow the court's rules, but the court told defendant he had not demonstrated this.

Defendant was represented in court by counsel on November 2 and 23, 2009, December 15, 2009, and January 11 and 25, 2010. Defendant, however, apparently was uncooperative with counsel and did not provide requested assistance.

*First Declared Doubt As to Competency*

On January 27, 2010, defendant and his attorney appeared again before Judge Stashyn. Defense counsel declared a doubt as to defendant's competence under section 1368. The court agreed defendant's behavior had been "disruptive and bizarre" and declared criminal proceedings suspended pending an evaluation by two doctors. Defendant objected to the examinations and the court reprimanded him for interrupting.

3

Both doctors found defendant competent. One noted defendant's "fixation on odd, ill-informed meanderings . . . may also serve the manipulative purpose of delaying the proceedings." On February 26, 2010, the trial court reviewed the reports and reinstated the criminal proceedings against defendant.

***Second Request for Self-Representation Is Granted***

On March 12, 2010, a new judge, Judge Getty, presided over a hearing at which defendant and his counsel were present. The hearing was continued to March 26, 2010. On that date, defendant and his counsel appeared before another judge, Judge Nail, for the purpose, according to defense counsel's representations at that time, "of an inquiry Judge Getty made with respect to a *Faretta* waiver." At first, defendant refused to take his seat, then he refused to give Judge Nail his name, insisting he was "the authorized representative and the attorney, in fact, for the defendant, Kevin Frazier." Defendant's counsel told the court defendant wished to represent himself. The court asked defendant if this was so, and defendant responded, "I'm the attorney, in fact, for the defendant, Kevin Frazier." The court asked defendant if he wanted to represent himself "[i]n that capacity," and defendant said, "Myself? Yes." The court asked counsel if defendant had been evaluated under section 1368. Upon learning he had, and after reviewing those reports, the court was inclined to allow self-representation, even though defendant refused to sign the *Faretta* waiver form and enter a "contract" with the court. The court asked one last time, demanding a yes or no answer, "do you want to represent yourself?" Defendant responded, "Well, me, as the living man will represent myself." The court then allowed defendant to represent himself.

***Self-Representation Revoked Again***

On April 29, 2010, the prosecuting attorney, unsatisfied with the March 26 grant of propria persona status, filed a motion asking the court to obtain an unequivocal and knowing waiver of counsel from defendant or to appoint counsel. Defendant failed to appear at the June 2, 2010, hearing on the motion, and the court, then Judge Getty again,

4

issued an order to show cause warning defendant failure to appear for a hearing on August 2, 2010, could result in denial of self-representation.

On August 2, 2010, defendant did not appear.  Judge Getty noted that Judge Nail had granted self-representation to defendant, while Judge Getty, who was to replace Judge Stashyn on the case, was unavailable.  Judge Getty also noted defendant's poor behavior in prior appearances and found the transcripts of defendant's interactions with Judge Stashyn weighed against self-representation.  Moreover, after being allowed to represent himself a second time, defendant was now missing court appearances and could no longer be reached at the address on file with the court.  Accordingly, the trial court revoked defendant's self-representation.

As after the first revocation of self-representation, counsel appeared at a number of subsequent hearings on defendant's behalf.

### Third Attempt at Self-Representation Denied

On December 10, 2010, defendant and his counsel, and codefendants and their counsel, appeared before yet another judge, Judge Foor, who ultimately presided over defendant's trial and sentencing.  Defendant and the court again discussed self-representation:

> "DEFENDANT FRAZIER:  Mr. Frazier doesn't have an attorney, your Honor.
> "THE COURT:  Mr. Frazier, I am not going to play games with you.  Do you want to represent yourself?  Do you want to represent yourself, yes or no?
> "DEFENDANT FRAZIER:  Well, who is Kevin Frazier?  Are you talking about the all capital name Kevin Frazier?
> "THE COURT:  I am talking about the gentleman who's talking to me.  In one second you are going to go in the side room here for contempt of court for playing games like this, so we are going to stop this right now.
> "DEFENDANT FRAZIER:  Will that be civil or criminal, Judge?
> "THE COURT:  Do you want to represent yourself in this matter?
> "DEFENDANT FRAZIER:  I am representing me, the authorized representative for Kevin Frazier.
> "THE COURT:  Mr. Frazier, I don't understand a thing you are saying."

At this point, the court asked defendant's counsel if he was having conversations with defendant. The answer was, "[n]o." The court warned defendant his behavior would not lead the court to continue the upcoming March 2011 trial. The court asked defendant again if he wanted to represent himself. Defendant responded he had "stated infinitum I am representing myself." Defendant and the court then engaged in a rambling colloquy about the court's jurisdiction and about defendant's belief that anyone who accepts an attorney becomes a ward of the court. Defendant then demanded the court's "venue, your oath of office written in the correct sentence structure," and "the jurisdiction of this court." When informed the court's jurisdiction related to the Penal Code, defendant asked "how does that apply to a flesh and blood man?" The trial court decided to have defendant and his counsel back, without the other defendants, to address the self-representation issue. Defendant, after "claiming common law jurisdiction" agreed he would "appear on behalf of Kevin Frazier on Wednesday."

Defendant and his counsel appeared before Judge Foor on Wednesday, December 15, 2010. The hearing was brief. Judge Foor stated he had taken time to review the case record. The judge continued: "it appears that Mr. Frazier has previously represented himself in this matter and those privileges were withdrawn, principally because of some of the same issues we are dealing with now when he was in Department 18." Rather than consider the matter of self-representation any further, the court "simply confirm[ed] the dates that we have" and urged defendant to cooperate with his lawyer.

### Second Declared Doubt As to Competency

On January 14, 2011, defendant and his counsel appeared before Judge Harrison. Defendant was in the courtroom but refused to come forward until asked, at which point he insisted he was "here by threat, intimidation and coercion." Counsel then declared his doubt of defendant's competence under section 1368, based, in part, on defendant's continued refusal to work with counsel. The court ordered a second round of psychiatric

6

evaluations.  When asked if he would cooperate in the exams, defendant asked the court, to "factually identify Kevin Frazier" and asked if he was a "corporation" or a "state."

The evaluators met with defendant and both concluded he was competent.  The defendant and his counsel returned to court, before Judge Foor, on March 10, 2011.  Defendant, as was becoming his routine, would not come to the defense table until ordered by the court and then claimed he was present "by threat, duress, and coercion."  Defendant would not sit down.  After reviewing the section 1368 evaluations and prior court transcripts, the court found defendant competent and reinstated proceedings against him.  The court noted defendant's "bizarre statements," but also his understanding of court requests and his cooperation upon admonishment by the court.  The court concluded "his behavior that he engages in here that makes it difficult for you [defense counsel] is at his own choosing."

There was no further request by defendant for self-representation.  That is, until after defendant was convicted by a jury, denied probation, and the trial court, Judge Foor, was poised to pronounce sentence on December 6, 2011.  Defendant then spoke out, claiming he had no contract with his defense counsel and he told the court "I evoke my right to represent myself."  The court responded:  "Mr. Frazier, your right to represent yourself was lost when the Court, before I became involved in this matter, found that you were too disruptive, and denied your right to continue to represent yourself . . . ."  The court allowed defendant to speak, and then sentenced him to an aggregate three-year term.

Defendant timely appealed.

## DISCUSSION

"A trial court must grant a defendant's request for self-representation if the defendant unequivocally asserts that right within a reasonable time prior to the commencement of trial, and makes his request voluntarily, knowingly, and intelligently.  [Citations.]  As the high court has stated, however, '*Faretta* itself and later cases have

made clear that the right of self-representation is not absolute.' (*Indiana v. Edwards* (2008) 554 U.S. 164, [171] . . . [other citations].) Thus, a *Faretta* motion may be denied if the defendant is not competent to represent himself [citation], is disruptive in the courtroom or engages in misconduct outside the courtroom that 'seriously threatens the core integrity of the trial' [citations], or the motion is made for purpose of delay [citation].' " (*People v. Lynch* (2010) 50 Cal.4th 693, 721–722, abrogated on other grounds by *People v. McKinnon* (2011) 52 Cal.4th 610.)

" 'The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law.' " (*People v. Welch* (1999) 20 Cal.4th 701, 734 (*Welch*) [further noting " 'an accused has a Sixth Amendment right to conduct his own defense, provided only *. . . that he is able and willing to abide by rules of procedure and courtroom protocol*' "].) "This rule is obviously critical to the viable functioning of the courtroom. A constantly disruptive defendant who represents himself, and who therefore cannot be removed from the trial proceedings as a sanction against disruption, would have the capacity to bring his trial to a standstill." (*Ibid.*) *Faretta* "did not establish a game in which defendant can engage in a series of machinations, with one misstep by the court resulting in reversal of an otherwise fair trial." (*People v. Clark* (1992) 3 Cal.4th 41, 115 (*Clark*).)

"[A] trial court must undertake the task of deciding whether a defendant is and will remain so disruptive, obstreperous, disobedient, disrespectful or obstructionist in his or her actions or words as to preclude the exercise of the right to self-representation. The trial court possesses much discretion when it comes to terminating a defendant's right to self-representation and the exercise of that discretion 'will not be disturbed in the absence of a strong showing of clear abuse.' " (*Welch*, *supra*, 20 Cal.4th at p. 735.) A record on appeal is often "cold," and it is "the trial court . . . that . . . is in the best position to judge defendant's demeanor." (*Ibid.*)

In *Welch*, the Supreme Court upheld the denial of self-representation where the defendant "interrupted the trial court several times to argue what the court had declared to be a nonmeritorious point; he accused the court of misleading him; he refused to allow the court to speak and he refused several times to follow the court's admonishment of silence." (*Welch*, *supra*, 20 Cal.4th at p. 735.) Taken together, this conduct "amount[ed] to a reasonable basis for the trial court's conclusion that defendant could not or would not conform his conduct to the rules of procedure and courtroom protocol, and that his self-representation would be unacceptably disruptive." (*Ibid.*)

The court reached the same result in *Clark*, where the defendant "apparently became disgruntled with the court's rulings. In front of the jury, he suddenly stated an intent to stand mute. This statement was clearly not motivated by the sincere desire to withhold a defense; it was instead an attempt to either inject error into the case, or to pressure the court into reconsidering its earlier rulings, or, most likely, both. It was merely one of a series of attempts to manipulate or coerce the trial court," such as engaging in "rambling discourse" and "frivolous" motions. (*Clark*, *supra*, 3 Cal.4th at pp. 113–115.) Defendant's conduct was "sufficiently disruptive to warrant termination of his self-representation." (*Id.* at p. 115.)

Defendant contends "[b]oth Judge Getty's revocation of [defendant's] pro per status and Judge Foor's appointment of counsel over [his] objections violated" his right to self-representation. Not so.

Judge Getty had a plethora of reasons to terminate defendant's self-represented status on August 2, 2010. At that point, he had failed to appear at two court hearings—the June 2, 2010, hearing on the prosecutor's motion to clarify defendant's self-representational status, and the August 2, 2010, hearing on the order to show cause issued because of his failure to appear at the June hearing and warning defendant failure to appear could jeopardize his self-representation. Whether defendant was willfully absent

9

or simply negligent in his duty to keep himself apprised of court hearings, his behavior was disruptive.

Defendant's absences were just the tip of the iceberg. Judge Getty stated he had reviewed transcripts of earlier hearings in the case. The transcripts, as recounted above, reveal the sort of disruptive conduct the Supreme Court held in *Welch*, *supra*, 20 Cal.4th at page 735 and *Clark*, *supra*, 3 Cal.4th at pages 114–115, justifies termination of self-representation. In fact, Judge Stashyn had previously found defendant disruptive on numerous occasions, and had already revoked defendant's propria persona status on that ground before. Defendant routinely "interrupted the trial court" to reargue and rehash "nonmeritorious point[s]" (*Welch*, *supra*, 20 Cal.4th at p. 735) concerning fanciful jurisdictional defects and irrelevant existential questions about defendant's status as a "flesh in blood man" or "corporate fiction." He repeatedly refused to take his seat at the defense table, and would acquiesce only after proclaiming he was there by force, intimidation, duress, or coercion. He repeatedly would not give straight answers to the court's questions, forcing the court to go in circles with defendant to obtain the most basic information. He invented concepts—for example, "overstanding" and his "occlusive number and the bid bonds"—that disrupted, delayed, and compromised the integrity of his proceedings and the proceedings of his codefendants. Defendant was disruptive even when seeking the very thing—self-representation—he claims to have desired, and during the times he was acting as his own attorney.

Defendant's behavior was so odd and disruptive it prompted investigations into his sanity, twice. The result of the investigation: defendant was sane, but, according to one doctor, his "fixation on odd, ill-informed meanderings" could well be aimed at "the manipulative purpose of delaying the proceedings." (Cf. *People v. Weber* (July 10, 2013, C060135) __ Cal.App.4th __ [2013 WL 3466223] ["evidence at the competency hearing indicates that defendant's bizarre motions and objections were not the result of delusions, but were intentional efforts to thwart the proceedings"].)

10

Finally, although we do not have a transcript of the earlier, March 2010, hearing before Judge Getty, the judge remarked at the August 2010, hearing "at the time when he appeared in court, he was not behaving very well, and not listening very well, and I didn't rule on his request to represent himself" but "continued it so I could pull the transcripts and see what went down."[3] It is clear Judge Getty gave careful consideration to the matter, and weighed the case history and his own encounters with defendant. His conclusion that self-representation should be terminated was well within his discretion.

At oral argument, defendant focused the court's attention on Judge Foor's denial of self-representation in December 2010, four months after Judge Getty had addressed the issue and reached the same conclusion. Judge Foor also did not abuse his discretion.

Despite defendant's disruptive behavior at the December 10, 2010, hearing before Judge Foor, eliciting a threat of contempt, Judge Foor chose to give defendant a further hearing to continue to address the issue of his representational status. The judge did so even though defendant did not appear to unequivocally state his desire to represent himself, instead answering questions with nonresponsive statements: "Mr. Frazier doesn't have an attorney," "who is Kevin Frazier?," "I am [already] representing me, the authorized representative for Kevin Frazier," and "I am [already] representing myself." (See *People v. Marshall* (1997) 15 Cal.4th 1, 20–21 [there is a "stringent" requirement that a demand for self-representation be unequivocal].)

Even if defendant's request on December 10, 2010, had been unequivocal, Judge Foor's refusal to grant self-representation on December 15, 2010, was within his discretion. Judge Foor had engaged in lengthy exchanges with defendant on the 10th and then become familiar with the extensive case history. He determined defendant "has

---

[3] Defendant's assertion that Judge Getty never observed defendant is not supported by the record, which, instead supports the inference Judge Getty observed defendant and found his behavior troubling. (*People v. Whalen* (2013) 56 Cal.4th 1, 56, fn. 22 ["on appeal we draw all reasonable inferences in support of the judgment"].)

previously represented himself in this matter and those privileges were withdrawn, principally because of some of the same issues we are dealing with now," and urged defendant to cooperate with his counsel. Judge Foor's statements were a clear, if implicit, denial of self-representation. Again, even assuming defendant had made an unequivocal request for such, the court's denial was both procedurally adequate and supported by ample record evidence of defendant's disruptive conduct. (See *People v. Percelle* (2005) 126 Cal.App.4th 164, 176 [implicit denial of *Faretta* motion permissible]; cf. *People v. Dent* (2003) 30 Cal.4th 213, 218 [we do not review the trial court's reasons for denying a *Faretta* motion, and "if the record as a whole establishes defendant's request was nonetheless properly denied . . . we would uphold the trial court's ruling"].)

Defendant's focus on Judge Foor's comment three months later, in March 2011, that despite "some rather bizarre statements made at times by Mr. Frazier, he is responsive to the Court, and he understands when I have admonished him, and he has cooperated when I have admonished him," is misdirected. Judge Foor made this statement in the context of finding defendant competent and reinstating criminal proceedings. Moreover, defendant's behavior *after* the denial of self-representation has no relevance to whether the court acted within its discretion at the time it ruled on his representational status.

In short, the judges in this case gave appropriate attention to defendant's representational status. Their decisions were amply grounded on the record and well within their discretion.

## DISPOSITION

The judgment is affirmed.

_____
Banke, J.

We concur:

_____
Margulies, Acting P. J.

_____
Dondero, J.