Filed 7/25/14  P. v. Clements CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>OTIS CLEMENTS,<br><br>    Defendant and Appellant. | B248854<br><br>(Los Angeles County<br>Super. Ct. No. NA094243) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Arthur H. Jean, Jr., Judge.  Affirmed.

Eileen M. Rice, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Kimberley J. Baker-Guillemet, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Otis Clements appeals from the judgment entered following a jury trial in which he was found guilty of inflicting corporal injury on a cohabitant in violation of Penal Code section 273.5, subdivision (a)[1] (count 1) and inflicting injury on a child (§ 273a, subd. (a) (count 2). In a separate proceeding, the trial court found true the allegation that appellant suffered a prior conviction within the scope of the Three Strikes law (§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). The trial court sentenced appellant to the upper term of six years for the base term on count 2, plus six years pursuant to sections 1170.12, subdivisions (a)-(d)/667, subdivisions (b)-(i), for a total sentence of 12 years. On count 1, the trial court imposed an eight-year sentence to run concurrently to the sentence imposed on count 2.

Appellant's sole issue on appeal is that the trial court did not sufficiently advise him of the risks of self-representation when the court granted his request to proceed in propria persona. Appellant was properly advised and we affirm the judgment.

**FACTS**

Because of the nature of the issue on appeal, we provide a brief summary of the facts. In December 2012, D. B. and her three children, A., Ah., and T., lived with appellant. D.B. and appellant had a "rocky" relationship that involved "a lot of verbal abuse" and "a lot of threatening." On December 14, 2012, D.B. paid appellant $50 for maintenance work he had done in the home. Appellant was lying down and D.B. placed the money on his side. Appellant told D.B. to "give the money to him like a woman." D.B. did not know what appellant meant by that remark and left to go to work. D.B. returned home from work that night and went to bed at approximately 10:00 p.m.

At some point after midnight on December 15, 2012, D.B. heard appellant enter the bedroom. Appellant had been drinking and told D.B. that if she ever threw money in his face he would "fuck [her] up." Appellant told D.B. to repeat what he said and when she failed to do so he punched her on the left cheek. D.B. jumped out of bed and ran to

---

[1] All statutory references shall be to the Penal Code unless otherwise noted.

the door. Appellant grabbed her shirt and ripped it. D.B. yelled, "You hit me." A., D.B.'s 17-year-old son, was watching television downstairs when he heard shouting. He came upstairs and told appellant, "I see what you are doing." Appellant struck A. on the left side of his face with a closed fist. A. called the police. D.B. took her three children and left the house.

When the police arrived they took pictures of D.B.'s injury and torn clothing. The photographs were admitted into evidence at trial. A.'s mouth was bleeding and his injury took "a couple of weeks to heal." A photograph of his injury was also admitted into evidence at trial.

No evidence was presented on behalf of appellant.

## DISCUSSION

Appellant contends the trial court erred when it allowed him to represent himself at trial, in propria persona, "without sufficiently advising him of the risks of self-representation." He argues the error was prejudicial and the judgment must be reversed.

### A. Procedural History

On January 17, 2013, appellant was charged by amended information with inflicting corporal injury on a cohabitant (§ 273.5, subd. (a)) and inflicting injury on a child (§ 273a, subd. (a)). Appellant was represented by a public defender at his preliminary hearing.

### B. Proceedings Below

At proceedings held on April 2, 2013, the trial court indicated its intention to begin the trial on the following day. Appellant requested a *Marsden*[2] hearing. After the court cleared the courtroom, appellant stated, "Your Honor, I would like to go pro per in this matter . . . ." The trial court asked appellant if he would be ready for trial the following morning. The trial court stated, "You understand you are going to trial. You are going to stand in front of twelve citizens all by yourself. If that's what you want to do all by

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

3

yourself we can talk about it." The court stated that it was going to treat appellant's *Marsden* request as a motion to proceed in propria persona (see *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*)). Defense counsel stated that appellant believed his prior conviction was not a strike because the jury found him "guilty of robbery but not guilty of the gun use." Defense counsel explained to appellant that he was mistaken but that she would file a *Romero*[3] motion at the conclusion of the trial, if appellant were convicted. Following an off-the-record discussion with his defense counsel, appellant stated, "I have no choice. I have to go pro per." The trial court instructed defense counsel to get appellant a "pro per form"[4] and indicated a discussion would take place after the lunch recess.

When proceedings resumed in the afternoon, appellant stated he still wanted to represent himself at trial. The trial court asked appellant if he understood that a jury would be picked in the morning and asked appellant if he was ready to go forward. The following colloquy occurred:

"[APPELLANT]: Well, I have no choice, Your Honor.

"THE COURT: Yes, you do have a choice. You have a very fine lawyer. She is a very capable person. You know, if you have a broken leg, just a little simple break, just a little crack in the bone, you could put a splint on it yourself and be careful and probably feel just fine. You could be your own doctor. If you have a compound fracture where the bone is sticking out of the skin, you would need professional medical help. You probably couldn't do it yourself. If you tried, you would probably find yourself infecting yourself, getting a terrible infection. You are going to find yourself dying. This is a felony that you are charged with. You could spend seven or eight, nine years in prison, at least. What's the maximum?

"[PROSECUTOR]: Fourteen six.

---

[3]     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

[4]     Advisement and Waiver of Right to Counsel–*Faretta* Waiver.

4

"THE COURT: Fourteen plus six.

"[APPELLANT]: Twenty years?

"[PROSECUTOR]: Fourteen plus six months.

"THE COURT: So you have the legal equivalent of a compound fracture. And in my view, in my experience, you should not represent yourself. And I recommend that you don't. I personally don't care whether you do or you don't. You have the right, if that's what you want. You are not going to make it any harder for me. It is going to be hard for you. And I am an expert in the criminal law. When I say that, I don't mean to say I have all of the answers. I don't. But I know a lot. And if I were charged with a crime, I would never go into a courtroom without a lawyer. If I were charged with what you are charged with, I wouldn't go into a courtroom without a lawyer. You have to understand that I am urging you not to represent yourself. But you can. You don't have to explain it to me. It is your decision. If you want to, I will find that you are making a knowing, intelligent and voluntary waiver of your right to a lawyer. So you choose.

"[APPELLANT]: I can't explain?

"THE COURT: I don't want an explanation. I want you to say I want to keep my lawyer or I want to be pro per, understanding that I am going to trial tomorrow.

"[APPELLANT]: I am going to trial tomorrow.

"THE COURT: And you want to be pro per?

"[APPELLANT]: Yes.

"THE COURT: [Defense counsel], you are relieved. We will see you tomorrow morning."

The following day, prior to jury selection, appellant indicated that he needed to call D.B.'s younger son, Ah., as a witness, but had not subpoenaed him. The court asked the prosecutor to ask D.B. to bring Ah. to court and asked appellant if Ah. was the only witness he needed. Appellant replied, "That's it. Thank you." The jury was empaneled and the trial began.

5

## C. Advisement and Waiver of Right to Counsel–*Faretta* Waiver

On April 2, 2013, appellant initialed and signed a four-page form entitled "Advisement and Waiver of Right to Counsel (*Faretta* Waiver)." In the *Faretta* form, appellant certified to the court that he could read and write, and that he understood he had certain constitutional rights, including the right to an attorney at no cost and the right to self-representation. In support of his request to act as his own attorney, appellant indicated that the highest level of education he reached was grade 12. Thirteen separate "dangers and disadvantages" of not having an attorney were identified on the form, and appellant initialed each of them. In the admonitions, appellant was advised that he must follow all the technical rules of substantive law and procedure; that the case against him would be handled by an experienced prosecutor and appellant would get no special consideration or assistance from the court; that it would be difficult for appellant to contact witnesses and investigate his case because of his custodial status; and that if he were convicted, he could not complain on appeal of ineffective assistance of counsel.

In the section entitled "Charges and Consequences" on appellant's *Faretta* form, appellant stated he understood that he was "giving up having a professional attorney" explain to him what crimes he was charged with and any possible legal defense he may have to those crimes; explain to him which charges required proof of general intent, specific intent or mental state, and what state of mind might apply to any defense he had; what facts must be proved before he could be found guilty; and if convicted, any posttrial motions and sentencing options available.

In the section entitled "Court's Advice and Recommendation," appellant initialed the admonition which indicated he understood that it was the advice and recommendation of the trial court that he not represent himself and that he accept a court-appointed attorney. Appellant acknowledged that if he accepted a court-appointed attorney, a trial attorney would be assigned to defend him, and that attorney would be able to investigate

6

his case, file pretrial motions, conduct the trial and generally advise appellant on what to do. Appellant also indicated he understood that, on any appeal from a conviction, his petition to represent himself would be considered by the Court of Appeal in determining whether he knowingly and intelligently waived his right to legal counsel. Appellant certified the *Faretta* form as follows: "I have read, understood and considered all of the above warnings included in this petition, and I still want to act as my own attorney. I freely and voluntarily give up my right to have a professional attorney represent me." Appellant signed and dated the form.

### D. Applicable Legal Principles

"A defendant in a criminal case possesses two constitutional rights with respect to representation that are mutually exclusive." (*People v. Marshall* (1997) 15 Cal.4th 1, 20.) "[T]he Sixth Amendment guarantees a defendant a right to counsel but also allows him to waive this right and to represent himself *without* counsel." (*U.S. v. Erskine* (9th Cir. 2004) 355 F.3d 1161, 1167.) Thus, in any case in which a *Faretta* request for self-representation has been made, the court must evaluate, sometimes under problematic circumstances, two countervailing considerations: on one hand, the defendant's absolute right to counsel, which must be assiduously protected; on the other hand, the defendant's unqualified constitutional right to discharge counsel if he pleases and represent himself. (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 545 (*Sullivan*).)

"'When confronted with a request' for self-representation, 'a trial court must make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" [Citation.] . . . [Citation.]" (*People v. Stanley* (2006) 39 Cal.4th 913, 932 (*Stanley*).) "In order to deem a defendant's *Faretta* waiver knowing and intelligent," the trial court "must insure that he understands 1) the nature of the charges against him, 2) the possible penalties, and 3) the 'dangers and disadvantages of self-representation.'

[Citation.]" (*U.S. v. Erskine, supra,* 355 F.3d 1161, 1167.) The admonitions must also "include the defendant's inability to rely upon the trial court to give personal instruction on courtroom procedure or to provide the assistance that otherwise would have been rendered by counsel. Thus, a defendant who chooses to represent himself or herself after knowingly, intelligently, and voluntarily forgoing the assistance of counsel assumes the risk of his or her own ignorance, and cannot compel the trial court to make up for counsel's absence." (*People v. Barnum* (2003) 29 Cal.4th 1210, 1214-1215.) The defendant "should at least be advised that: self-representation is almost always unwise and that the defense he conducts might be to his detriment; he will have to follow the same rules that govern attorneys; the prosecution will be represented by experienced, professional counsel who will have a significant advantage over him in terms of skill, training, education, experience, and ability; the court may terminate his right to represent himself if he engages in disruptive conduct; and he will lose the right to appeal his case on the grounds of ineffective assistance of counsel. [Citation.] In addition, he should also be told he will receive no help or special treatment from the court and that he does not have a right to standby, advisory, or cocounsel. [Citation.] While this list of issues is not exhaustive, it demonstrates that there are a number of matters the court must ask about and consider before ruling on a defendant's request to represent himself." (*People v. Phillips* (2006) 135 Cal.App.4th 422, 428.)

"No particular form of words, however, is required in admonishing a defendant who seeks to forgo the right to counsel and engage in self-representation. '"The test of a valid waiver of counsel is not whether specific warnings or advisements were given but whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case."' [Citation.]" (*People v. Lawley* (2002) 27 Cal.4th 102, 140.) If the trial court's

8

warnings communicate powerfully to the defendant the "disadvantages of proceeding pro se," that is all "*Faretta* requires." (*Sullivan, supra,* 151 Cal.App.4th at p. 546, quoting *Lopez v. Thompson* (9th Cir. 2000) 202 F.3d 1110, 1118.)

"The burden is on the defendant to demonstrate he did not knowingly and intelligently waive his right to counsel." (*People v. McArthur* (1992) 11 Cal.App.4th 619, 627.) In determining on appeal whether appellant invoked the right to self-representation, we examine the entire record de novo. (*Stanley*, *supra*, 39 Cal.4th at p. 932.)

### E.      Analysis

Appellant has failed to meet his burden of demonstrating that his waiver of his right to counsel was not knowing and intelligent. Appellant's contention that the trial court did not "seek clarity around appellant's request" and should have "ask[ed] appellant a few questions to understand his statement that he would like to go pro per" are belied by the record. After appellant expressed his desire to represent himself he completed a four-page form entitled, "Advisement and Waiver of Right to Counsel (*Faretta* Waiver)." The standardized waiver form included an extensive list of the "Dangers and Disadvantages of Self-Representation" and also the "Charges and Consequences" appellant faced, along with the "Court's Advice and Recommendation" to not act as his own attorney. Appellant, a high school graduate, initialed each and every section and signed the form. Appellant did not raise any questions about the form and there is nothing in the record to indicate he did not understand the waiver. That alone is sufficient to find a knowing and intelligent waiver. As the California Supreme Court explained in *People v. Blair* (2005) 36 Cal.4th 686 (*Blair*) (overruled on another point by *People v. Black* (2014) 58 Cal.4th 912, 919), the advisement form serves as "a means by which the judge and the defendant seeking self-representation may have a meaningful dialogue concerning the dangers and responsibilities of self-representation.

9

[Citation.]  The court might query the defendant orally about his responses on the form, to create a clear record of the defendant's knowing and voluntary waiver of counsel.  [Citation.]  The failure to do so, however, does not necessarily invalidate defendant's waiver, particularly when, as here, we have no indication that defendant failed to understand what he was reading and signing."  (*Blair, supra,* 36 Cal.4th at p. 709, overruled on other grounds in *People v. Black* (2014) 58 Cal.4th 912.)

Here, the trial court went even further, and in the strongest terms advised appellant that he "should not represent [himself]."  The court advised appellant of the nature of the charges against him.  The court told appellant that if he were in appellant's shoes and faced similar charges he would not "go into a courtroom without a lawyer" despite the fact that he is an expert in criminal law.  The court informed appellant that he faced a maximum penalty of 14 years and six months if convicted.  The court told appellant he had "the legal equivalent of a compound fracture" that required professional help.  When appellant stated he had "no choice" but to proceed in propria persona, the court told him that he did have a choice because he had a "very capable" and "very fine lawyer."  The trial court determined from the colloquy that appellant understood the complexity of the charges and penalties he faced, and the disadvantages of proceeding without legal representation.  As a result, appellant's decision to waive his right to counsel was done "with eyes open."  (*Faretta, supra,* 422 U.S. at p. 835.)

The combination of the signed *Faretta* waiver and the trial court's advice and recommendation adequately brought home to appellant the essential dangers of self-representation.  The record '"suggests no confusion on defendant's part' regarding the 'risks of self-representation, or the complexities of his case, much less that his election to

10

represent himself was other than voluntary.'" (*Sullivan, supra,* 151 Cal.App.4th at p. 553.)

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J. *

               FERNS

We concur:


_____, Acting P. J.

   ASHMANN-GERST


_____, J.

   CHAVEZ

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.