Filed 11/29/22  P. v. De Leon CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079599 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF004167) |
| DANIEL MONICO DE LEON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, William D. Quan, Judge.  Reversed.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Daniel Monico De Leon for second degree murder (Pen. Code, § 187, subd. (a)).  The court sentenced De Leon to prison for 15 years to

life. It also imposed $370 in fines and fees and ordered $8,827.19 in victim restitution.

De Leon appeals, arguing the trial court erroneously denied his request to represent himself under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*), abused its discretion by admitting a photograph of the victim alive, and violated his due process rights by imposing certain fees and fines before determining De Leon had the ability to pay.

We conclude the trial court violated De Leon's Sixth Amendment rights by denying his *Faretta* motion to represent himself at trial. We therefore reverse the judgment.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Because the facts of De Leon's underlying offenses are not pertinent to our review of the issues raised, we eschew our traditional discussion of them. Instead, we focus on De Leon's requests to represent himself under *Faretta*.

In the early stages of the instant matter, De Leon made a request to fire his attorney (a public defender) and represent himself. The trial court confirmed with De Loen that he sought to represent himself and made sure that his request was not intended to be a demand for a different public defender. The trial court then asked whether De Leon completed a *Faretta* advisement form. De Leon indicated that he had done so. The court then noted: "We are going to go ahead and note that Mr. De Leon, to the Court's understanding, has unequivocally asked to represent himself during this proceeding." In an abundance of caution, the court again confirmed that De Leon wished to represent himself and not be appointed a new attorney.

---

[1] Because we are reversing the judgment on *Faretta* grounds, we do not reach De Leon's other two contentions.

2

As he indicated to the trial court, De Leon completed and signed a *Faretta* advisement form. In that form, De Leon stated he had an eleventh grade education and is fluent in English. He initialed that he understood all his constitutional rights as well as the advisement and rules regarding self-representation. De Leon also wrote "I'm okay with the outcome" next to the advisement "that self-representation is almost always unwise and that persons exercising that right may conduct the case in a manner harmful to themselves."

In response to the question, "Do you wish to talk to a lawyer who can explain the defenses and elements of the charge(s) to you[,]" De Leon responded with an emphatic, "No!" In response to the question, "After reading all of the above, do you still want to represent yourself and as your own lawyer[,]" De Leon answered with an ardent, "Yes!" Also, in response to the question, "Do you give up your right to have a lawyer represent you, either one of your choice or one appointed by the court[,]" De Leon responded, "Yes, obviously." Finally, De Leon signed and dated at the end of the form after it stated: "**I ACKNOWLEDGE INQUIRY AND RECEIPT OF ADVICE CONCERNING THE ABOVE, AND BY MY SIGNATURE, REQUEST TO REPRESENT MYSELF.**"

In addition, the trial court questioned De Leon at length regarding his request to represent himself. To this end, the court explained to De Leon the various rules and consequences of self-representation, and De Leon stated that he understood the rules and consequences and that he still wanted to represent himself. For example, the trial court cautioned De Leon: "You understand that it is not advisable for you to represent yourself, and it's unwise for that to go on; do you understand that?" De Leon replied, "Yes, but I still want to represent myself."

3

During the questioning, De Leon showed that he was aware of the proceedings against him. When asked about the charge against him, De Leon referenced the correct Penal Code violation (Pen. Code, § 187). De Leon also stated that he faced a possible life term if convicted. However, in response to the court's questions, De Leon was not able to list the elements of murder and the defenses available to him.

Although De Leon named some of his constitutional rights, he struggled to explain them. When the court asked him about his constitutional rights with respect to the instant action, De Leon responded, "My constitutional rights is that I wasn't read my *Miranda* rights. That's one." When the court followed up about his constitutional rights at trial, De Leon stated, "Well, that I can represent myself." Further, De Leon did not appear to understand the right to a speedy trial, the subpoena power of the court, or the right against self-incrimination.

During its questioning of De Leon, the court repeatedly emphasized that it was De Leon's burden to convince the court that he knew what he was doing. Toward the beginning of the questioning, the trial court stated, "Before I can allow you to represent yourself, you have to convince me that you know what you are doing." After De Leon did not satisfactorily identify and explain his constitutional rights to the court, it commented, "Well, if you want to represent yourself, again, you need to be the one to show me that you know what you're doing."

However, during questioning, De Leon reiterated that he was fully aware of the problems of self-representation, but he still wished to represent himself. After earlier assuring the court he was "aware of the consequences" of self-representation, De Leon again later assured the court, "I'm fully aware

4

of what I'm doing, Your Honor, and I know I'm not in the wrong. [¶] . . . [¶] If I catch life, then so be it, Your Honor."

The court also probed De Leon's experience representing himself in court. It asked De Leon if he was familiar with the "substantive and procedural rules of law." The court cautioned De Leon that he would be held "to the same standards of an attorney," that he would be "up against a district attorney," and he would "not get any deference from the court." In addition, the court warned De Leon that he would be at a disadvantage if he disrupted court proceedings or did not know procedure. In response, De Leon indicated he "was fully aware of it."

The court questioned whether De Leon had any legal training and pointed out that he could be represented by a "skilled attorney." It also told De Leon that he would not receive any special library privileges or the assistance of an investigator without a request. In addition, De Leon indicated that he understood that if he was disruptive at trial, the court could terminate his right to representation, and if he represented himself, he could not claim ineffective assistance of counsel.

Toward the end of the court's questioning of De Leon, the court cautioned De Leon that it was "not advisable for [him] to represent [himself], and it's unwise for that to go on." De Leon responded, "Yes, but I still do want to represent myself, Your Honor." And the court and De Leon then engaged in the following exchange:

> "COURT: I just want you to understand, Mr. De Leon, you understand that without knowing the—the—law, the element[s] of the crime, defenses available to you—you can't even answer that for me. [¶] You understand that you're going to be helplessly lost in attempting to identify and prepare possible defenses to any of the charges against you, to say nothing about making objections about any admissibility of any evidence at trial, or relevance of any

evidence?  [¶]  You understand you're going to be helplessly lost?

"[De Leon]:  Yes, Your Honor.  [¶]  I would like to proceed though."

The court then denied De Leon's *Faretta* motion, explaining:  "I don't think that you are—I don't believe that you have the ability—or at least the understanding to be able to understand or to fully represent yourself in these proceedings."

## DISCUSSION

## I

## THE *FARETTA* MOTION

### A.  De Leon's Contentions

De Leon maintains the trial court improperly denied his *Faretta* motion based on its belief that he was unable to adequately defend himself at trial. We agree.

### B.  Relevant Law and Standard of Review

Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant has a " 'constitutional right to proceed *without* counsel when' [the] defendant 'voluntarily and intelligently elects to do so.' [Citation.]"  (*Indiana v. Edwards* (2008) 554 U.S. 164, 170; see *Faretta*, *supra*, 422 U.S. at pp. 818-832.)  The "autonomy and dignity interests" that underlie this right are not defeated by "the fact or likelihood that an unskilled, self-represented defendant will perform poorly in conducting his or her own defense . . . ."  (*People v. Mickel* (2016) 2 Cal.5th 181, 206 (*Mickel*).)

A self-represented defendant need not meet the standards of an attorney or even be capable of conducting an "effective defense."  (*Mickel*, *supra*, 2 Cal.5th at p. 206.)  Indeed, a defendant's right to control his defense

6

includes the right to decide to present no defense, or a defense that has little or no chance of success. (*Id*. at p. 209.) "[R]ecognizing a criminal defendant's right to self-representation may result ' "in detriment to the defendant, if not outright unfairness." ' [Citation.] But that is a cost that we allow defendants the choice of paying, if they can do so knowingly and voluntarily." (*Id*. at p. 206.)

"When 'a motion to proceed *pro se* is timely interposed, a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so.' " (*People v. Dent* (2003) 30 Cal.4th 213, 217 (*Dent*).) An intelligent waiver requires a general understanding of the risks and disadvantages of forgoing counsel. (*Faretta*, *supra*, 422 U.S. at p. 835.) The defendant "should at least be advised that: self-representation is almost always unwise and that the defense he conducts might be to his detriment; he will have to follow the same rules that govern attorneys; the prosecution will be represented by experienced, professional counsel who will have a significant advantage over him in terms of skill, training, education, experience, and ability; the court may terminate his right to represent himself if he engages in disruptive conduct; and he will lose the right to appeal his case on the grounds of ineffective assistance of counsel." (*People v. Phillips* (2006) 135 Cal.App.4th 422, 428.)[2]

An erroneous denial of a timely and unequivocal *Faretta* request is reversible per se. (*People v. Becerra* (2016) 63 Cal.4th 511, 520 (*Becerra*).)

---

[2]    "There are standard scripts for judges to use in taking *Faretta* waivers, as well as standard *Faretta* waiver forms." (*People v. Weber* (2013) 217 Cal.App.4th 1041, 1058.)

7

## C.  Analysis

This case is a textbook example of *Faretta* error.  De Leon unequivocally asked to represent himself, stating it multiple times in response to the court's questioning.  De Leon filled out a *Faretta* advisement form in which he indicated he was "ok with outcome" in response to the admonition that it is often unwise and harmful to represent one's self in a criminal trial.  He emphatically indicated ("Yes!") that he wanted to represent himself and clearly expressed that he was giving up his right to have a lawyer represent him ("Yes obviously").

The trial court cautioned De Leon about the danger of self-representation, but De Leon clearly stated he wanted to represent himself. Indeed, De Leon acknowledged that he understood it was unwise to self-represent, yet stated, "but I still do want to represent myself."  Thus, the court appropriately warned De Leon about the risk of self-representation, De Leon acknowledged that he understood that risk, and De Leon made clear that he wanted to represent himself.

However, the court also asked De Leon about his knowledge of his constitutional rights and the law as well as his educational background and experience in court.  And, in the end, the court denied De Leon's motion because he did not have the "ability" or "understanding" to represent himself at trial.  Even the People concede the court's stated reasons for denying the *Faretta* motion are "problematic."  (See *People v. Bradford* (1997) 15 Cal.4th 1229, 1364 [" '[A] criminal defendant's ability to represent himself has no bearing upon his competence to choose self-representation' "]; *People v. Butler* (2009) 47 Cal.4th 814, 828 ["Defendants untrained in the law may well provide themselves with inept representation[, b]ut *Faretta* gives them the right to make a thoroughly disadvantageous decision to act as their own

8

counsel, so long as they are fully advised and cognizant of the risks and consequences of their choice"]; *Mickel*, *supra*, 2 Cal.5th at p. 206.)

Although the People filed a respondent's brief arguing that no *Faretta* error occurred, at oral argument, they conceded that they could not make that argument in light of *People v. Burgener* (2016) 1 Cal.5th 461. As such, the People conceded that *Faretta* error occurred and that the judgment must be reversed. We appreciate the People's candor. Further, as we discussed *ante*, this is a clear case of *Faretta* error. Thus, the judgment must be reversed.

DISPOSITION

The judgment is reversed.

HUFFMAN, Acting P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.