Filed 6/1/16  P. v. Torres CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　v.<br><br>ANTHONY TORRES,<br><br>　　Defendant and Appellant. | B264337<br><br>(Los Angeles County<br>Super. Ct. No. PA082749) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hayden Zacky, Judge.  Affirmed.

Paul E. Katz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Anthony Ray Torres appeals from his judgment of conviction and contends the court committed reversible error when it denied his request to represent himself. We disagree and affirm.

## FACTS

Officers stopped appellant and his companion at approximately 11:00 p.m. one evening as they were walking in a residential area. The officers recognized appellant's companion and knew he was on formal probation. They engaged appellant and his companion in conversation and asked appellant "if he had anything on him." Appellant replied "yes" and gestured to his right side. One officer conducted a patdown search of appellant and found an 18-inch concealed knife tucked into appellant's waistband.

## PROCEDURAL BACKGROUND

The information charged appellant with one count of carrying a concealed dirk or dagger (Pen. Code, § 21310), a felony, and alleged appellant had one prior conviction for a serious or violent felony (robbery; Pen. Code, § 211) within the meaning the of the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)-(j), 1170.12).

Approximately one month prior to trial, appellant requested new counsel. The court held a *Marsden* hearing.[1] Appellant said he did not think defense counsel was trying to help him because of "the way he talks and his attitude." He also complained that he had asked for a copy of the police report and "all the evidence," and counsel had given those things to him, but he had lost them. Counsel responded that he told appellant he would give him new copies of the lost paperwork, but he could not do it that day as he had no copies with him. Counsel further explained that appellant generally was not happy with his representation because he did not like the reality that counsel was communicating to him—i.e., that appellant's alleged prior strike would double his

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118, 123-125 (*Marsden*) (when the defendant requests new counsel, the trial court should hold a hearing to permit the defendant to explain his or her reasons for the request).

sentence if found true, despite that the prior strike was a juvenile adjudication. Appellant refused to believe the prior strike was relevant or could have any bearing on the case and did not want to take counsel's advice to accept the prosecution's plea deal. Counsel noted that he had spoken with appellant's mother and he had some mental health issues, and while he believed appellant was competent to stand trial, appellant did not seem to be grappling well with his options and potential consequences.

The court noted for the record that appellant did "not demonstrate that he is not competent," though he appeared to be "a little bit slow to think at times." The court denied the *Marsden* motion.

Once the *Marsden* hearing concluded, the court briefly explained to appellant that his prior juvenile adjudication for robbery could be used as a strike against him to double his sentence. (See, e.g., *People v. Nguyen* (2009) 46 Cal.4th 1007, 1015.) After the court's explanation, the following colloquy occurred:

> "The Defendant: And [defense counsel] said that I can go pro per which means I could be my own lawyer or something like that, like go to the—
>
> "The Court: If that is something that you want to do you could, we will give you what is called a *Faretta*[2] waiver and you can try to fill it out but I am telling you right now based on my interactions with you, I wouldn't do it. You are going to go up against a very experienced prosecutor.
>
> "The Defendant: He either defends me or I go pro per, right?
>
> "The Court: Correct.
>
> "The defendant: Yeah.
>
> "The Court: If you want to go pro per though I will be happy to give the *Faretta* waivers but you had better be ready for trial pretty soon because your trial is going to start within 15 days of today. It is a really simple case, not complicated.

---

**2**    *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

"The Defendant: I prefer to go pro per and not have [defense counsel] as my public defender.

"The Court: To me it sounds like you are making a knee-jerk reaction here because I didn't replace him as your lawyer.

"The Defendant: What was that?

"The Court: It sounds to me like you are saying you want to represent yourself just because I didn't give you a new lawyer.

"The Defendant: No, I would rather represent myself. I have studied the law a little bit.

"The Court: You are a little slow.

"The Defendant: I am. I don't really know what is going on.

"The Court: You want to go against a D.A.? They are going to rip you to shreds if you go to trial.

"The Defendant: They probably will.

"The Court: I know they will.

"The Defendant: I mean they will.

"The Court: You want to do that?

"The Defendant: Well, yeah, because either --

"The Court: Let's give him the *Faretta* waivers in the back. [¶] You can read the *Faretta* waivers and then we will bring you out in a little while and I will go over them with you, okay?"

After the recess for appellant to review the *Faretta* form, the court noted that it believed appellant's request to represent himself was "impulsive and equivocal," but it nevertheless proceeded to go through the *Faretta* waiver form with him. Appellant initialed only the first box on the *Faretta* form, which advised him of his right to an attorney, and then filled in his age as 20 years old. He did not fill out the remainder of the form in any manner.

The court asked appellant how he was going to represent himself when he could not understand the form, and asked if he was able to read the form. Appellant indicated he was not able to read it. The court again expressed a concern that appellant was acting

4

impulsively, observing: "I am very concerned that you are asking to represent yourself, you are being kind of, almost like a child because you didn't get what you want, because I didn't appoint a new lawyer so you are like, kind of like stomping your feet and saying fine, I just want to represent myself. And I think that is what you are doing." Appellant denied that he was acting impulsively or in anger.

The court asked the highest level of appellant's education; he replied he was "a couple" credits shy of getting his high school degree through adult school. Appellant then explained he could read, but he was having a problem understanding or focusing on the *Faretta* form. The court attempted to go through the *Faretta* form orally with appellant because it was concerned he could not "understand intelligently what is on this waiver form." Appellant indicated he understood his right to an attorney and right to a speedy and public jury trial. The court asked whether he understood that he had the right to subpoena witnesses or documents he may need in his defense, to which appellant responded: "Not really, but as in like, I could get my information, like the police report." As to the other rights on the form (rights to confront and cross-examine witnesses, against self-incrimination, and to act as his own attorney), when the court asked appellant if he understood each, appellant failed to respond to the court's query each time. Of particular significance, appellant did not respond when the court asked him specifically about his right to represent himself:

> "The Court: I am not getting a response. [¶] Do you understand that you have the right to act as your own attorney, you may waive the right to the assistance of a professional attorney, and do you further understand if you choose to act as your own lawyer you will have to conduct your own defense without the assistance of an attorney, do you understand that?
>
> "The Defendant: (No response).
>
> "The Court: Getting no response. . . ."

Appellant further failed to respond at all when the court asked whether he understood the nature of the charges against him or the elements of the charge and defenses.

The court proceeded to deny appellant's motion to represent himself on two bases. First, the court found the request impulsive and equivocal and made in response to the court's refusal to grant his *Marsden* motion. Second, the court found appellant did not knowingly and intelligently waive his right to counsel with an understanding of the probable risks. ("[T]he court is making a finding that Mr. Torres is unable to understand the *Faretta* waiver, I can't get through it with him. We have provided him a copy to read, which he didn't understand. I tried to go over it with him verbally and he is unable to understand verbally what I am telling him . . . .")

The case proceeded to trial and the jury found appellant guilty as charged. The court found the prior strike allegation to be true. It sentenced appellant to a total of four years in state prison, consisting of the midterm of two years, doubled for the prior strike finding. Appellant filed a timely notice of appeal.

## DISCUSSION

The Sixth Amendment of the United States Constitution gives defendants the right of self-representation. (*Faretta, supra*, 422 U.S. at p. 819.) To invoke the right of self-representation, the defendant should unequivocally assert the right within a reasonable time before trial. (*People v. Windham* (1977) 19 Cal.3d 121, 127-128.) "The court faced with a motion for self-representation should evaluate not only whether the defendant has stated the motion clearly, but also the defendant's conduct and other words. Because the court should draw every reasonable inference against waiver of the right to counsel, the defendant's conduct or words reflecting ambivalence about self-representation may support the court's decision to deny the defendant's motion. A motion for self-representation made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice may be denied." (*People v. Marshall* (1997) 15 Cal.4th 1, 23; see *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1002 ["Equivocation of the right of self-representation may occur where the defendant tries to manipulate the proceedings by switching between requests for counsel and for self-representation, or where such actions are the product of whim or frustration."].)

6

In addition, "[a] knowing and intelligent waiver of the right to counsel is required before a criminal defendant is allowed to represent himself. [Citation.] The defendant should be made aware of the dangers and disadvantages of self-representation so the record shows he is making an informed choice with his eyes wide open. [Citation.] The purpose of this requirement is to determine whether the defendant in fact understands the significance and consequences of his decision and whether that decision is voluntary. [Citation.] On appeal the test is not whether specific warnings or advisements were given. Instead, we examine the record as a whole to determine whether the defendant understood the disadvantages of self-representation, including the risks and complexities of his case." (*People v. Miranda* (2015) 236 Cal.App.4th 978, 984.)

We examine the record de novo for error. (*People v. Miranda, supra*, 236 Cal.App.4th at p. 984.) Error in denying a timely motion for self-representation is reversible per se. (*People v. Joseph* (1983) 34 Cal.3d 936, 946-948.)

In this case, the court found *both* that appellant's request for self-representation was equivocal *and* that he was not knowingly and intelligently waiving his right to counsel. Either basis would have been sufficient to deny appellant's *Faretta* motion. (*People v. Welch* (1999) 20 Cal.4th 701, 729.) Even assuming appellant's request was unequivocal, we hold the court properly determined appellant was not knowingly and intelligently requesting to represent himself. (See *People v. Phillips* (2006) 135 Cal.App.4th 422, 429 ["[A]n unequivocal request only triggers the inquiry into whether the defendant is competent to make the request and whether he understands the risks and disadvantages attendant to self-representation."].)

The court attempted to make appellant aware of the dangers and disadvantages of self-representation and determine whether he understood the consequences of his request by first giving him the *Faretta* form. Appellant did not fill out the majority of the form, indicated he could not understand the form, and possibly could not even read it. The court then attempted to review the advisements on the form with him orally. Although he indicated he understood some, he did not respond at all to several of the court's advisements. Most significantly, appellant would not respond when the court asked if he

7

understood that he had the right to waive counsel, and if he chose to represent himself, he would have to conduct his defense without the aid of an attorney. On this record, the court was justified in refusing to find appellant understood the disadvantages of self-representation and refusing to find he knowingly and intelligently waived his right to counsel.

Appellant contends the *Faretta* form should not be used as a litmus test, otherwise any defendant who fails to "fully comprehend" the legalese on the form could be deprived of the right of self-representation. The circumstances here constitute much more than a failure to fully comprehend the legalese on the form, and the cases on which appellant relies to illustrate his point are readily distinguishable.

In *People v. Silfa* (2001) 88 Cal.App.4th 1311 (*Silfa*), the "defendant clearly established he knew and understood the significance and consequences of his decision and without coercion he wanted to waive his right to counsel." (*Id.* at p. 1323.) The court advised the defendant orally of the dangers of self-representation and then gave him time to review the *Faretta* form. There was no indication he could not read or understand the form. (*Silfa, supra*, at pp. 1314-1315.) When he returned to the courtroom, he "indicated to the court that he knew what crime he was charged with violating, he understood his right to counsel, his right to a jury trial, his right to use the subpoena power of the court, his right of cross-examination, his right against self-incrimination and his right to present a defense. He also told the court he understood he would not receive special privileges and indicated to the court he understood all the dangers of self-representation and the responsibility to act appropriately in court." (*Id.* at p. 1315.) The court and the defendant then engaged in an extended discussion in which the court questioned his knowledge of the charges against him, his possible sentence, voir dire, and potential evidentiary issues, among other things. (*Id.* at pp. 1315-1321.) After this, despite finding that the defendant was "'mentally competent and . . . fully informed of the right to counsel,'" the court found appellant was not intelligently and voluntarily waiving his right to counsel. (*Id.* at p. 1321, italics omitted.) In this context, the appellate court reversed the judgment and held the *Faretta* form could not "be used to disqualify

8

individuals who do not understand each nuance of the complex subject matter presented." (*Silfa, supra*, at p. 1322.) The defendant "had demonstrated that he was literate and understood the dangers of self-representation. Nothing more was required of him in order to exercise his right of self-representation." (*Ibid.*)

Thus, unlike appellant, the defendant in *Silfa* responded to all the court's queries and indicated he understood all the rights and waivers at issue, both by filling out the *Faretta* form and by responding orally. By contrast, here, it was far from clear that appellant understood the significance and consequences of his decision. It is not the case that appellant merely failed to comprehend every complex nuance of the *Faretta* form.

*People v. Weber* (2013) 217 Cal.App.4th 1041 is equally far afield. In that case, the defendant argued the court failed to ensure that he knowingly and voluntarily waived counsel. The court attempted to provide standard *Faretta* admonitions, but the "defendant interrupted repeatedly, and refused to answer or gave hostile answers to standard questions posed by" the court. (*Weber*, at p. 1059.) The appellate court concluded the "defendant was trying to inject reversible error into the case by insisting on his right to proceed without counsel, but thwarting the trial court's ability to complete standard *Faretta* admonitions. Further, the trial court did ascertain on the record that defendant understood he would be held to the same standards as an attorney, that the trial court would not assist him in representing himself, and that another trial judge had recently allowed defendant to represent himself in a criminal case." (*Id.* at p. 1045.) Under those circumstances, the "record support[ed] the trial court's finding that defendant knowingly and voluntarily chose to waive counsel." (*Ibid.*) The record did not reflect "'"confusion on defendant's part" regarding the "risks of self-representation, or the complexities of his case, much less that his election to represent himself was other than voluntary."'" (*Id.* at p. 1059.)

We cannot say the same here. If appellant's failure to respond to the court's questioning and failure to fill out the *Faretta* form does not reflect a genuine lack of understanding, it may be seen as evidence that appellant was avoiding the issues because

9

he was equivocating on his initial request to represent himself.  In either of these circumstances, the court did not err in denying his *Faretta* motion.

In short, "[o]ur waiver inquiry 'must be pragmatic,' and focused upon 'the status of the defendant's knowledge and understanding at the time of the purported waiver.' [Citation.]  'The requirement is met if the record establishes the defendant is literate and understanding and has voluntarily exercised the choice of representing himself.'" (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 546.)  The record did not so establish here, and the court did not therefore err in denying appellant's *Faretta* motion.

**DISPOSITION**

The judgment is affirmed.


FLIER, J.

WE CONCUR:



BIGELOW, P. J.



RUBIN, J.