Filed 11/4/21  P. v. Gayle CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ERIC GAYLE,<br><br>    Defendant and Appellant. | C093272<br><br>(Super. Ct. No. 20FE008822) |

Defendant Eric Gayle appeals from his conviction for two counts of felony assault after he injured his sister.  He contends the trial court erred by failing to order a full hearing on his competency to stand trial, by granting his motion under *Faretta v. California* (1975) 422 U.S. 806, 821 (*Faretta*) to represent himself at trial, and by sentencing him in absentia.  We agree only with the final claim; we vacate the sentence and remand for resentencing.

1

**FACTS AND PROCEEDINGS**

The underlying facts are not relevant to the issues raised on appeal. It suffices to say that defendant headbutted his sister on her forehead, threatened her with a knife, and stabbed her in the palm of her hand.

On June 29, 2020, at his arraignment (Brody, Comm'r.), defendant pleaded not guilty, and a public defender was appointed to represent him. Defendant appeared before the same commissioner with another appointed attorney on July 6 and declared his intention to represent himself under *Faretta*. Neither of the two attorneys who represented defendant on June 29 or July 6 declared a doubt about defendant's competence or indicated that he was unable to help prepare his defense.

At the July 6 hearing, defendant first asserted he was angry that his appointed attorney did not come see him and stated: "I would like to go pro per." His attorney told him that he was making a bad decision, and defendant responded, "[t]hat's my decision, sir." Counsel then told him that counsel would visit before the next court date and admonished him to not discuss his case in court, to which he replied that he did not want counsel's help. The court then attempted to continue the hearing for two weeks, but defendant asked for his *Faretta* hearing. The court then asked defendant if he was making an "unequivocal request to represent yourself at this time?" Defendant responded: "At this time, yes, sir, I am."

The court then gave defendant written and verbal *Faretta* advisements. The advisements contained extensive admonitions regarding defendant's constitutional rights and the dangers and disadvantages of self-representation as follows: "1. You have the right to be represented by an attorney at all stages of this case and if you cannot afford your own attorney, the Court will appoint one to represent you. [¶] 2. It is generally not a wise choice to represent yourself in a criminal matter. [¶] 3. Penalties for the offense if

found guilty are: 8 years state prison.[1] [¶] 4. The Court cannot help you present your case or grant you any special treatment. [¶] 5. You will be opposed by a trained prosecutor. [¶] 6. You must comply with all the rules of Criminal Procedure and Evidence, just as an attorney must. [¶] 7. If you are convicted you cannot appeal based on the claim that you were not competent to represent yourself. [¶] 8. If you are disruptive, you will be removed from the courtroom and an attorney will be brought in to finish your case. [¶] 9. You have the right at any time to hire your own attorney. However, the court will not delay your case to allow an attorney to prepare to represent you."[2]

The court both informed defendant orally of his exposure and required him to write it on the form. Defendant assured the court that he understood each of the *Faretta* advisements, and he indicated in writing that he had read, understood, and accepted each term. The court asked defendant about his background before accepting his waiver. Defendant said he had 14 years of formal education, having graduated from high school and completed some college. Defendant said he knew how a trial worked and had been through a preliminary hearing or trial before. He understood *voir dire* to be when "[j]udges, lawyers, jurors deliberate." Following the advisements, the court again asked defendant: "So given these advisements, you do wish to represent yourself?" Defendant responded: "Without a doubt." The court found that he "knowingly, intelligently, and voluntarily decided to represent himself with full knowledge of the risks and danger of doing so."

---

[1] At that time of the advisement, defendant was charged only with one count of assault with a deadly weapon and a strike.

[2] Defendant asserts that he signed another set of *Faretta* warnings on September 2 that indicated his potential exposure was six years in prison. Those warnings related to a different case and are not relevant here.

On July 13, the same commissioner again gave defendant verbal *Faretta* advisements because the first set were not clearly transcribed from the July 6 hearing. The court again went through each of the *Faretta* advisements. Defendant asked the court if the prosecutor and the court would "group up on" him, to which the court responded no; it offered to withdraw defendant's *Faretta* request and appoint counsel. Defendant clearly indicated he wanted to continue with the waiver, responding: "Go ahead. Next one. I got you. Court cannot present your case --." The court again delved into defendant's legal background, and defendant stated that he had seen every episode of Perry Mason and understood how a trial is conducted. The court again found that defendant had made a knowing, intelligent, and voluntary request to represent himself with full knowledge of the risks and dangers in doing so.

At defendant's preliminary hearing held on August 25, 2020, the magistrate (McCormick, J.) told defendant that having an attorney would be "beneficial" to him, to understand "the protocols, the procedures, the legalities" and twice told defendant the court "would be happy to" appoint a lawyer for him; defendant twice declined. The court also read the entire charging document to defendant in open court and informed him that a prior strike was alleged.

On November 2, the court (Bowman, J.) arraigned defendant on an amended information with an enhancement allegation pursuant to Penal Code section 667, subdivision (a) that added five years to his exposure.[3] At the arraignment on the amended information, the court advised defendant that the allegation "essentially adds five years to any prison sentence." Defendant responded, "Sir, Prop[osition] 57 took care of that, sir." The court answered: "Okay. With that in mind, I'm going to arraign you on that."

---

[3] Further undesignated statutory references are to the Penal Code.

On November 19, the day before the bench trial was scheduled to begin, a second amended information added count two, assault by means likely to produce great bodily injury.  (§ 245, subd. (a)(4).)  At arraignment, defendant asked what his exposure was on the new count, to which the trial court (White, J.) replied:  "same number of years as the [section] 245[, subdivision] (a)(1) but it's not a strike."  Defendant responded:  "I thought there were no strikes anyway with Prop[osition] 57, sir?"  The court informed him "there's still strikes," and defendant responded, "[s]o Prop[osition] 57 isn't correct?  Or Prop[osition] 47?"[4]  The court replied that "the Prop[ositions] are correct insofar as they state what they state, but they did not eliminate all strikes."  Defendant asked:  "So for the record, you're saying that there is no such thing as Prop[osition] 47 and Proposition 57 by the People of California?"  The court explained to defendant that count one is a strike and provided him with a copy of section 1192.7, which the court described as "a fairly complex section."  Defendant asked the court:  "I thought that was dropped already, sir.  Didn't you say that?  There was no knife involved now?"  Before the court could respond, defendant stated:  "I appreciate what you're doing, Judge.  I really do, but can we get on with the motions?"  The court proceeded to arraign defendant on the amended information, fully informing him of the two counts and the enhancement allegations.

At the next court date, on November 23, the trial court noted that the maximum punishment for "assault with a deadly weapon" was four years, doubled to eight years if the strike prior were found true.  The three-day bench trial began that same day.  After

---

**4**  We presume defendant was referring to Proposition 57, the Public Safety and Rehabilitation Act, which, among other things, modified parole eligibility for individuals convicted of a nonviolent felony offense and sentenced to state prison (Cal. Const., art. I, § 32), and Proposition 47, the Safe Neighborhood and Schools Act, which was approved by the voters in 2014 and "reduced the punishment for certain theft- and drug-related offenses, making them punishable as misdemeanors rather than felonies." (*People v. Page* (2017) 3 Cal.5th 1175, 1179.)  Neither proposition eliminated strikes, and neither proposition had any effect on defendant's charges.

the conclusion of the evidence, the court denied defendant's motion for entry of judgment of acquittal. (§ 1118.)

On November 24, the trial court found defendant guilty of assault with a deadly weapon (§ 245, subd. (a)(1); count one) and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count two). The court also found the prior conviction enhancement true. (§§ 667, subds. (a)-(d); 1170.12, subd. (b).)

During defendant's sentencing hearing, the trial court ordered defendant to be removed from the courtroom for repeatedly interrupting the court despite admonishments not to do so.[5] The court then sentenced defendant in absentia to 13 years in prison: the upper term of four years on count one, doubled to eight years due to the strike, plus five years for the section 667, subdivision (a) prior. The court imposed the midterm of three years on count two, doubled due to the prior strike, stayed pursuant to section 654. Defendant timely appealed. The case was fully briefed on June 11, 2021. Argument was waived and the case submitted on September 17, 2021.

## DISCUSSION

### I

### *Defendant's Competence To Stand Trial*

Defendant contends that the trial court erred by failing to conduct a competency hearing because the court was presented with substantial evidence raising a doubt as to his competence to stand trial. As we will explain, we conclude the record does not contain substantial evidence that defendant was incompetent.

---

[5] The parties suggest at various times in their briefing that the trial court explicitly revoked defendant's pro per status before removing him from the courtroom, but the record reflects only removal, not revocation.

6

A. *Legal Background*

"A person shall not be tried or adjudged to punishment . . . while that person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a).) "To be competent to stand trial, defendant must have ' " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and 'a rational as well as factual understanding of the proceedings against him.' " ' " (*People v. Ramos* (2004) 34 Cal.4th 494, 507.)

" 'The decision whether to order a competency hearing rests within the trial court's discretion, and may be disturbed upon appeal "only where a doubt as to [mental competence] may be said to appear as a matter of law or where there is an abuse of discretion." [Citation.] When the court is presented with "substantial evidence of present mental incompetence," however, the defendant is "entitled to a section 1368 hearing as a matter of right." [Citation.] On review, our inquiry is focused not on the subjective opinion of the trial judge, but rather on whether there was substantial evidence raising a reasonable doubt concerning the defendant's competence to stand trial. [Citation.] . . . A trial court reversibly errs if it fails to hold a competency hearing when one is required under the substantial evidence test.' " (*People v. Woodruff* (2018) 5 Cal.5th 697, 721 (*Woodruff*); see *People v. Welch* (1999) 20 Cal.4th 701, 742 [when evidence casting doubt on defendant's competence is less than substantial, it is within the trial court's discretion whether to order a competency hearing].)

"Substantial evidence of incompetence may arise from separate sources, including the defendant's own behavior," or a psychiatrist or psychologist report opining that defendant is incapable of understanding the purpose or nature of the proceedings or is incapable of assisting in his defense or cooperating with counsel. (*People v. Ramos*,

7

*supra*, 34 Cal.4th at p. 507.)  However, a mere " 'litany of facts, none of which actually related to his competence' " to understand the nature of the proceedings or to rationally assist his counsel is insufficient to support holding a competency hearing.  (*Id.* at p. 508.) "[D]isruptive conduct and courtroom outbursts by the defendant do not necessarily demonstrate a present inability to understand the proceedings or assist in the defense." (*People v. Mai* (2013) 57 Cal.4th 986, 1033.)  For example, in *People v. Medina* (1995) 11 Cal.4th 694, our Supreme Court found the defendant's cursing and disruptive behavior "displayed an unwillingness to assist in his defense, but did not necessarily bear on his *competence* to do so."  (*Id.* at p. 735.)

    B.  *Analysis*

    Here, the court at no point expressed a doubt as to defendant's mental competence; therefore, we must determine whether the court was presented with substantial evidence of incompetence.  "In resolving the question of whether, as a matter of law, the evidence raised a reasonable doubt as to defendant's mental competence, we may consider all the relevant facts in the record."  (*People v. Young* (2005) 34 Cal.4th 1149, 1217.)

    Defendant does not specify at what point in the proceedings he contends there existed substantial evidence of his incompetence.  Rather, he raises 14 examples of behaviors he asserts constitute substantial evidence of his incompetence that required the trial court to hold a full competency hearing.  However, as we will explain, defendant's examples illustrate only irreverent or inappropriate behavior or his lack of legal expertise, concerns that are insufficient to raise a doubt as to his competence.  (*People v. Marshall* (1997) 15 Cal.4th 1, 33 (*Marshall*); *People v. Koontz* (2002) 27 Cal.4th 1041, 1065 [deficiencies in self-representation suggest lack of legal training common in most pro se defendants, not incompetency to stand trial].)

    Defendant first asserts that the court recognized at the July 6 *Faretta* hearing that he had gone through "a mental health court or diversion hearing or process" in a separate criminal case.  But there was no evidence of *any* finding that he lacked competence to

8

stand trial. (*Bassett v. McCarthy* (9th Cir. 1977) 549 F.2d 616, 619 [having a mental infirmity does not necessarily imply that the defendant did not understand the proceedings or could not cooperate with his counsel].)

Next, defendant points to his sister's trial testimony that, in 2010, defendant jumped on top of the roof of the family home, set fires in the home, poured bleach in her room, and cracked windows and mirrors. Similarly, defendant also points to trial testimony that he made incoherent statements to police officers following his arrest. But that testimony bears little on defendant's competence to understand the nature of the proceedings against him or assist in his defense. (See *People v. Hayes* (1999) 21 Cal.4th 1211, 1281 ["Evidence regarding past events that does no more than form the basis for speculation regarding possible current incompetence is not sufficient"]; *People v. Johnson* (2018) 21 Cal.App.5th 267, 277 ["Mental health can be fluid; defendant's competency could very well change over time"].) Indeed, defendant's sister's testimony involved events occurring 10 years before trial. Moreover, defendant elicited the testimony regarding his statements to police officers while cross-examining an officer about the lack of any confession to the crime, a reasonable line of questioning that demonstrated his understanding of the proceedings and his ability to represent himself.

Defendant next points to various instances of his behavior during trial, including purporting to confuse the arresting officers for one another, quoting the bible and referencing evil, devil worshipper, and devil's advocate, suggesting that the trial judge had cancer and deserved to die from it, and repeatedly interrupting the court during the trial. Defendant points to one instance where he asked Officer Smith, who was African-American, whether he and Officer Jackson, who was Caucasian, were chameleons who could "change your color." But rather than evidence of incompetence, this last comment appears to have been an attempt at humor. Indeed, defendant cross-examined Jackson about his training and experience and asked him relevant questions about his handling of the knife as a piece of evidence, whether he went inside the house to confirm that

9

defendant was inside and was breaking items, as stated in his report, whether it was normal behavior for a person who had just stabbed someone to be standing in front of the house where the stabbing occurred, whether there was any evidence defendant was intoxicated, the extent of defendant's sister's injuries, and whether the officers should have interviewed the members of the household. Defendant pursued similar appropriate lines of inquiry with Smith. These examinations by defendant are substantial evidence that he was *competent*.

As for the "[r]eligion-infused comments," without more, such comments are not indicative of mental illness and do not suggest the need for a competency determination. (*People v. Mendoza* (2016) 62 Cal.4th 856, 895; see *Woodruff*, *supra*, 5 Cal.5th at p. 722 [defendant's comments that a "higher up" had sent an attorney to represent him did not demonstrate an inability to understand the proceedings].) Moreover, defendant asked his sister whether she was testifying that "somebody is a devil worshipper" or a "devil's advocate" following her testimony that a statue of Hades fell out of his pocket during the incident. Those questions were rationally related to his sister's testimony, if not relevant to the issues at trial.

Defendant next contends that he demonstrated an inability to understand the charges against him, to understand his exposure related to the prior strike and prior serious felony enhancements, and to prepare for trial. He points to his emphasis at trial of the issue of a lack of great bodily injury, which the court explained was not required to prove the crimes of assault with a deadly weapon or assault with force likely to produce great bodily injury as well as his musings at trial that he had no exposure to sentencing enhancements for a prior strike due to the effects of irrelevant legislation. But the fact that defendant, a nonlawyer, focused on issues at trial not helpful to his defense and perhaps did not fully understand the effect of recently enacted legislation on his case does not suggest incompetence as it is defined by statute and interpreted by caselaw. (See, inter alia, *Woodruff*, *supra*, 5 Cal.5th at p. 722 ["Neither defendant's confusion about bail

10

nor his inability to understand the court's discussion of case law was evidence of inability to understand the proceedings against him"]; *People v. Bradford* (1997) 15 Cal.4th 1229, 1364 [" 'technical legal knowledge' " is irrelevant for determining competency].) Defendant also points to difficulties he had in preparing for his case while incarcerated, but logistical challenges in preparing for trial do not show incompetence.

Defendant next argues that he demonstrated an inability to question his sister or understand her testimony because he asked her the same question repeatedly and could not remember her testimony about his use of the knife on her. But defendant justified his repeated questioning at trial by asserting that he was "trying to see if I get the same answer," which demonstrates that he was testing his sister's credibility, a strategy. Similarly, even assuming he forgot some of the earlier testimony, it is not unreasonable for a person with no legal training to struggle to remember all of the testimony while trying a case. Defendant demonstrated his understanding of the issues at trial in other ways; for example, he elicited testimony from his nephew that the nephew did not witness him stab his sister, and he impeached his sister with her statement to police.

Defendant next argues that he demonstrated an inability to understand the proceedings. He points to his request for access to resources to help him cross-examine witnesses, for help in preparing a writ of habeas corpus, and help from the court to obtain and admit evidence. He also argued at the preliminary hearing that his bail should be reduced to zero based on an executive order from the Governor. But as we have discussed, evidence of a lack of legal training and understanding of legal principles is not evidence of inability to understand and participate in the proceedings. Defendant moved for acquittal at the appropriate time, he communicated with the court during the presentation of his case, and he cross-examined witnesses. The evidence demonstrates that defendant understood the proceedings; his seeking help with resources also shows his understanding thereof. The court was not obliged to assist him, as he had been warned multiple times.

11

Defendant next points to his explanation for requesting a jury trial. He requested a bench trial because "[o]ne Pro is better than 12 rookees [*sic*]. Who think they are better than me." At trial, he explained: "Rookies, frankly, remind me of Stockholm syndrome, where you hold people hostage, and they get to identify with you and 'we got to do this together'. All you needed was a rope. You got a nigga. But I had to say, if I'm gonna get hung, I may as well get hung by one, and that Stockholm syndrome is not there." While defendant's invocation of Stockholm syndrome and allusion to a lynching may be inapt and offensive, he did express a reasonable belief that the court offered a more professional and fair audience for his defense than a jury constituted of 12 legally untrained individuals whom he apparently suspected may lack the ability to think independently of one another.

Finally, defendant points to his jail behavior, which included instances of insubordination and cursing or threatening staff. But while defendant may have exhibited anti-social behavior while incarcerated, that behavior does not suggest that he was incapable of understanding the proceedings or assisting counsel.

None of the factors raised by defendant, individually or combined, constitute substantial evidence that defendant was unable to understand the nature of the proceedings or unable to assist in his defense. In the absence of substantial evidence of defendant's incompetence, the trial court did not abuse its discretion by failing to hold a competency hearing.

II

*Defendant's* Faretta *Motion*

Defendant claims that the court erred in granting his request to self-represent because it failed to conduct an adequate inquiry into his competence to represent, his waiver of the right to counsel was neither knowing nor voluntary, and his invocation of his right to self-representation was equivocal. As we will explain, we disagree with each of these claims.

12

A.  *Legal Background*

The Sixth Amendment "implies a right of self-representation."  (*Faretta*, *supra*, 422 U.S. at p. 821; *Marshall*, *supra*, 15 Cal.4th at p. 20.)  Because a defendant who waives his right to counsel relinquishes "many of the traditional benefits associated with the right to counsel" (*Faretta*, at p. 835), the Sixth and Fourteenth Amendments demand an inquiry and findings by the trial court that the defendant was both (1) competent to waive his right to counsel, that is, whether he has the ability to understand the proceedings in which he has asked to represent himself and whether he understands the dangers of and disadvantages of self-representation, and (2) that his decision to forgo the assistance of counsel was both knowing and voluntary.  (*Godinez v. Moran* (1993) 509 U.S. 389, 400-401 (*Godinez*); *People v. Phillips* (2006) 135 Cal.App.4th 422, 428.)  Additionally, "[u]nlike the right to representation by counsel, " '[T]he right of self-representation is waived unless defendants articulately and unmistakably demand to proceed *pro se*." ' "  (*People v. Stanley* (2006) 39 Cal.4th 913, 932.)

B.  *Defendant's Competence*

"The competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself."  (*Godinez*, *supra*, 509 U.S. at p. 399.)  If there is a question in the court's mind as to the defendant's ability to comprehend the nature and object of the proceedings against him, trial judges should conduct "a rather careful inquiry . . . probably by way of a psychiatric examination" into a defendant's mental capacity.  (*People v. Lopez* (1977) 71 Cal.App.3d 568, 573.)

California courts may, but are not required to, deny requests for self-representation by defendants who are competent to stand trial, but who lack the mental health or capacity to conduct their own defense at trial.  The United States Supreme Court has explained:  "[T]he Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness

13

to the point where they are not competent to conduct trial proceedings by themselves." (*Indiana v. Edwards* (2008) 554 U.S. 164, 178.)  Under *Edwards*, competence to represent oneself at trial is the ability "to carry out the basic tasks needed to present [one's] own defense without the help of counsel."  (*Id.* at p. 175.)

Our Supreme Court adopted the *Edwards* limitation on self-representation in *People v. Johnson* (2012)53 Cal.4th 519, at page 528 (*Johnson*).  Accordingly, the standard trial courts should apply when deciding whether to exercise their discretion to deny self-representation is "whether the defendant suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel."  (*Id*. at p. 530.)  Thus, trial courts need not routinely require into the mental competence of a defendant seeking self-representation; they must do so "only if it is considering denying self-representation due to doubts about the defendant's mental competence."  (*Ibid.*)

The determination of whether a defendant is competent to represent himself is committed to the trial court's sound discretion and will not be disturbed absent an abuse of that discretion.  (*People v. McArthur* (1992) 11 Cal.App.4th 619, 627.)  Because the trial judge is typically in the best position to determine the defendant's competency, we defer to the trial court's determination and uphold it so long as it is supported by substantial evidence.  (*Johnson, supra*, 53 Cal.4th at pp. 531-533.)

Defendant contends the court abused its discretion by not denying his motion to represent himself at each available opportunity for it to do so.  In support, defendant argues that there is substantial evidence raising a reasonable doubt as to his competence to stand trial, and substantial evidence showed that he lacked capacity to represent himself.

As we concluded *ante*, there is no substantial evidence that defendant was not competent to stand trial.  Moreover, the issue before us is not whether substantial evidence showed that defendant lacked capacity to represent himself, but rather whether

14

the court's decision to grant defendant's motion to self-represent is supported by substantial evidence. (*Johnson, supra*, 53 Cal.4th at pp. 531-533.)

Such substantial evidence was before the commissioner at both *Faretta* hearings. (*People v. Welch, supra,* 20 Cal.4th at p. 739 [in reviewing trial court's determination of competence, we only review the evidence before the court at the *Faretta* hearing].) At the first *Faretta* hearing on July 6, defendant clearly expressed his desire to represent himself, contested the court's attempt to continue the hearing, expressed his understanding of the *Faretta* advisements, and responded to the court's questions about his background, education, and understanding of the judicial system.

On July 13, at the second *Faretta* hearing, defendant again acknowledged his understanding of the *Faretta* advisements, stopping the court to ensure that it would not align with the prosecutor in their case. While we recognize that defendant cited Perry Mason as his background, he also unequivocally stated that he understood how a trial is conducted.

We disagree with defendant's contention that the commissioner erroneously failed to make findings about his competence, as the trial court did in *Johnson*. In *Johnson*, the trial court was required to make findings about the defendant's incompetence because it *denied* the defendant's motion to self-represent. (*Johnson, supra*, 53 Cal.4th at p. 530 [trial court only needs to inquire into the mental competence of a defendant seeking self-representation where the court is considering denying self-representation due to doubts about the defendant's mental competence].) Here, there is no substantial evidence that defendant was incompetent, and no evidence that defendant suffered from a severe mental illness to the point where he could not carry out the basic tasks needed to present a defense without the help of counsel. (*Ibid.*)

Finally, we conclude that defendant's reliance on *People v. Gardner* (2014) 231 Cal.App.4th 945 and *People v. Shiga* (2016) 6 Cal.App.5th 22 (judg. vacated and cause remanded, *People v. Shiga* (2019) 34 Cal.App.5th 466) is misplaced. Defendant cites

15

these cases for the proposition that defendant should not have been allowed to represent himself even though he was competent to stand trial.  But in *Gardner*, the appellate court concluded that the trial court did not abuse its discretion in denying the defendant's motion to self-represent where there was a psychological report opining that the defendant was incompetent to represent himself.  (*Gardner*, at p. 960.)  There was no such report here.  In *Shiga*, the trial court erroneously believed that its finding that the defendant was competent to stand trial " 'tied' " its hands as to a determination as to whether defendant was competent to represent himself.  (*Shiga*, at p. 40.)  The court made no such erroneous determination here.

Thus, we see no abuse of discretion in granting defendant's *Faretta* request.

C.  *Knowing and Voluntary Waiver of Right to Counsel*

Defendant next contends he did not knowingly and voluntarily waive his right to counsel.  A valid *Faretta* waiver requires " 'a finding that the waiver is knowing and voluntary, i.e., the accused understands the significance and consequences of the decision and makes it without coercion.' " (*People v. Frederickson* (2020) 8 Cal.5th 963, 1002.) "The purpose of the 'knowing and voluntary' inquiry, . . . is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." (*Godinez, supra,* 509 U.S. at p. 401, fn. 12.)  "No particular form of words, however, is required in admonishing a defendant who seeks to forgo the right to counsel and engage in self-representation.  ' "The test of a valid waiver of counsel is not whether specific warnings or advisements were given but whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case." ' " (*People v. Lawley* (2002) 27 Cal.4th 102, 140.)

"On appeal, a reviewing court independently examines the entire record to determine whether the defendant knowingly and intelligently invoked his right to self-representation." (*People v. Doolin* (2009) 45 Cal.4th 390, 453.)  We must "indulge every

16

inference against waiver of the right to counsel." (*Marshall*, *supra*, 15 Cal.4th at p. 20.) However, " '[*t*]*he burden is on the defendant* to demonstrate he did not knowingly and intelligently waive his right to counsel.' " (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 547.)

Defendant raises two related arguments in support of his contention that he did not knowingly and voluntarily waive his right to counsel. First, he argues that no court gave him adequate warnings of the dangers of self-representation because no court adequately advised him of his exposure to 13 years in prison. Second, he contends that he did not understand his sentencing exposure because he asserted on multiple occasions that he was no longer facing a strike.

"[T]here is a split of authority in California as to whether the court must also specifically advise the defendant of the maximum penal consequences of the conviction." (*People v. Ruffin*, *supra*, 12 Cal.App.5th at p. 544, citing *People v. Bush* (2017) 7 Cal.App.5th 457, 469-474 [discussing decisions and holding advisement of penal consequences is not essential to a valid *Faretta* waiver]; *People v. Jackio* (2015) 236 Cal.App.4th 445, 454-455 [holding that court must advise the defendant of the maximum punishment if convicted, including enhancements].) Even assuming there is such a requirement, here defendant was adequately advised.

The commissioner informed defendant at the July 6 hearing that he faced up to eight years in prison, and the trial court later advised him following the filing of the amended information that he faced an additional five years.[6] When defendant mused that a recent change in the law had eliminated strikes, the court repeatedly informed him that

---

[6] Defendant asserts he was also misadvised that he faced up to only six years in prison. But the form to which he refers involves a different criminal case. The *Faretta* advisements defendant signed for this case correctly stated that his exposure was up to eight years in prison under the then-current information.

it had not.  Although defendant contends he did not understand that the three strikes law still applied to him, any such failure was not based on his inability to understand the nature of the charges, but instead on his stubbornly incorrect interpretation of the law.  Accordingly, defendant was fully informed of his exposure.

Further, we see no evidence of coercion.  Both defense counsel and the commissioner advised defendant that self-representation was unwise.  When defendant expressed a concern about collusion, the court offered to withdraw the *Faretta* waiver, but defendant declined.  He was later told a lawyer would be beneficial to him and twice offered appointment of counsel before his preliminary hearing.  It is clear that defendant understood the disadvantages of self-representation and knowingly and voluntarily waived his right to counsel.

D.  *Invocation of Right of Self-Representation*

Defendant contends that the court erred in accepting his invocation of his right to self-representation because his request was not unequivocal.  We disagree.

"[A] [*Faretta*] motion made out of a temporary whim, or out of annoyance or frustration, is not unequivocal—even if the defendant has said he or she seeks self-representation." (*Marshall, supra*, 15 Cal.4th at p. 21.)  " 'Equivocation, which sometimes refers only to speech, is broader in the context of the Sixth Amendment, and takes into account conduct as well as other expressions of intent.' " (*Id.* at p. 22.) Vacillation between requests for counsel and self-representation may amount to equivocation, waiver, or forfeiture of the right of self-representation.  (*Ibid.* [citing cases].)  Accordingly, "one of the trial court's tasks when confronted with a motion for self-representation is to determine whether the defendant truly desires to represent himself or herself." (*Id.* at p. 23.)  We apply a "stringent standard" when assessing the adequacy of a defendant's invocation.  (*Id.* at p. 21.)  Thus, courts must draw every reasonable inference and indulge in every reasonable presumption against waiver of the right to counsel.  (*People v. Danks* (2004) 32 Cal.4th 269, 295.)  " 'In determining on

18

appeal whether the defendant invoked the right to self-representation, we examine the entire record de novo.' " (*Ibid.*) We are not bound by the trial court's determination that the defendant unequivocally invoked his right to self-representation. (*People v. Boyce* (2014) 59 Cal.4th 672, 703.)

We agree with the parties that defendant's *initial* request to represent himself appeared born out of frustration or anger. He expressly conveyed his frustration that his appointed attorney had not come to see him. However, as we have described, defendant then repeatedly asserted his desire to represent himself, and he never wavered from that position despite many opportunities to do so. When the court attempted to continue the hearing, defendant pushed back and asked to go on with the *Faretta* hearing. When the court advised defendant for a second time, again giving the *Faretta* warnings on July 13, defendant reasserted his desire to represent himself. When the court offered to withdraw defendant's *Faretta* request, defendant did not accept the offer or do anything to otherwise suggest that he wanted an attorney appointed to represent him. When offered an attorney at subsequent appearances, he repeatedly and politely declined. Accordingly, the record demonstrates that defendant repeatedly considered his choice and unequivocally invoked his right to represent himself, despite opportunities to change his mind and offers to assist him in doing so.

We conclude defendant knowingly, voluntarily, and unequivocally invoked his right to represent himself, and he was competent to do so.

III

*Sentencing Without Counsel*

During the sentencing hearing, the trial court expelled defendant from the courtroom after he repeatedly interrupted the court to argue matters that had already been decided against him during trial, refused to allow the court to speak, and refused to be silent. Defendant did not request counsel, and the court did not appoint counsel to represent defendant. The court pronounced defendant's sentence after defendant left the

19

courtroom.  Defendant now contends the trial court violated his Sixth Amendment right to counsel by sentencing him in absentia.  The Attorney General agrees, and we agree with the parties.

Under the Sixth Amendment, a criminal defendant has a fundamental right to counsel and to present a defense.  (*United States v. Cronic* (1984) 466 U.S. 648, 653; *People v. Ortiz* (1990) 51 Cal.3d 975, 982.)  "A trial court's decision to involuntarily remove a self-represented defendant from trial without appointing substitute counsel implicates several Sixth Amendment rights, including 'the right to be present at . . . trial' [citations]; 'the right to counsel at all critical stages of the criminal process' [citation]; and the 'right to self representation.' "  (*People v. Ramos* (2016) 5 Cal.App.5th 897, 906.)  Involuntary removal of a self-represented defendant from trial qualifies as a deprivation of the right to counsel.  (*People v. Carroll* (1983) 140 Cal.App.3d 135, 141-142 (*Carroll*).)  Thus, when a defendant is representing himself but must be removed from court due to bad behavior, substitute counsel should be appointed to represent him.  (*Id.* at p. 141 ["justice cannot be done" in one-sided criminal proceedings where neither defendant nor defense counsel is present]; *Ramos*, at pp. 908-909 [temporary removal of self-represented defendant without appointing counsel during cross-examination of prosecution witness required reversal of conviction].)

" '[T]he total deprivation of the right to counsel at trial' " is structural error under both the federal and state Constitutions.  (*People v. Lightsey* (2012) 54 Cal.4th 668, 699.)  "A trial would be presumptively unfair, . . . where the accused is denied the presence of counsel at 'a critical stage.' "  (*Bell v. Cone* (2002) 535 U.S. 685, 695.)  Sentencing is a critical stage in the criminal process within the meaning of the Sixth Amendment right to counsel.  (*People v. Doolin*, *supra*, 45 Cal.4th at p. 453 ["A criminal defendant has a constitutional right to counsel at all critical stages of a criminal prosecution, including sentencing"].)  Accordingly, "the involuntary exclusion from the courtroom of a defendant who was representing himself, without other defense counsel present, was

fundamental error requiring reversal without regard to prejudice." (*Carroll*, *supra*, 140 Cal.App.3d at p. 142.)

Here, the trial court violated defendant's Sixth Amendment right to counsel when it ordered him to leave the court and sentenced him in absentia without appointing counsel to represent him. (*Carroll*, *supra*, 140 Cal.App.3d at pp. 141-142; *People v. Ramos*, *supra*, 5 Cal.App.5th at p. 908.) Accordingly, we vacate the sentence and remand the matter for resentencing. Because we are remanding for resentencing, defendant may raise his claim of inability to pay any proposed fines and fees at that time.

## DISPOSITION

The sentence is vacated, and the matter is remanded to the trial court for full resentencing. The judgment is otherwise affirmed.

/s/
Duarte, J.

We concur:

/s/
Mauro, Acting P. J.

/s/
Hoch, J.