Filed 9/20/22  P. v. Iriarte CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078776 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD286533) |
| DANIEL GEXEMAN IRIARTE, | |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of San Diego County, Frederic L. Link, Judge.  Reversed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Daniel Gexeman Iriarte of driving under the influence (DUI) of alcohol with three or more DUI convictions within 10 years (Veh. Code, § 23152, subd. (a); count 1); driving while having a measurable blood

alcohol level with three or more prior DUI convictions within 10 years (Veh. Code, § 23152, subd. (b); count 2); and providing false information to a police officer (Pen. Code, § 148.9, subd. (a); count 3). In a bifurcated proceeding, the trial court found Iriarte guilty of driving with a suspended license (Veh. Code, § 14601.2, subd. (a); count 4). In regard to counts 1 and 2, Iriarte admitted the allegations that he had suffered four prior DUI convictions within the past 10 years.

The court sentenced Iriarte to prison for three years.

Iriarte appeals, claiming the trial court erroneously denied his request to represent himself under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*), and the court erred in failing to grant his motion to appoint new counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

We conclude the trial court violated Iriarte's Sixth Amendment rights by denying his *Faretta* request to represent himself at his trial. We therefore reverse the judgment.[1]

FACTUAL AND PROCEDURAL BACKGROUND

Because the facts of Iriarte's underlying offenses are not pertinent to our review of the issues raised, we eschew our traditional discussion of them. Instead, we focus on Iriarte's requests to represent himself under *Faretta.*

On the day set for trial, February 8, 2021, Iriarte's counsel appeared remotely due to the possibility that he had COVID. When Iriarte learned of his attorney's condition, he stated that he would represent himself if his attorney tested positive, leading to the following exchange:

"[Iriarte]: I'll just represent myself, if not.

---

[1] We do not reach Iriarte's claim that the trial court erroneously denied his *Marsden* motion.

2

"THE COURT: No. You're not going to represent yourself, sir.

"[Iriarte]: Because I could do—I believe I have the right to represent myself.

"THE COURT: No, you're not—no, no. Well, I'll let you give that point. Why don't you take your mask down and tell me—you want to represent yourself?

"[Iriarte]: Well, if he's—if we're going to wait that long, then yeah.

"THE COURT: Well, let me ask you a question: Why do you think you can represent yourself?

"[Iriarte]: Because I have the right to.

"THE COURT: Well, it's more than that, sir. What do you know about the law?

"[Iriarte]: We'll decide the day of trial.

"THE COURT: You don't know the law, do you?

"[Iriarte]: We'll decide the day of trial.

"THE COURT: And you don't know what the jury instructions are, do you?

"[Iriarte]: I have read some of them.

[¶] . . . [¶]

"THE COURT: Have you ever been in a trial, sir?

"[Iriarte]: No, I haven't.

"THE COURT: Okay. So you have no idea how a trial works, do you?

"[Iriarte]: No.

"THE COURT: Okay. No, you don't have the ability, sir. I'm not going to let—did you go to college?

3

"[Iriarte]: What was that?

"THE COURT: Did you go to college?

"[Iriarte]: No, I didn't have time to because of this.

"THE COURT: Did you graduate from high school?

"[Iriarte]: Yes, sir.

"THE COURT: Okay. All right. He doesn't have the ability. I can't let him go forward. Plus, it's the day of trial, and I find it dilatory."

Later that same day, after the parties discussed whether Iriarte wanted a bifurcated trial on his prior conviction allegations and after a recess, the trial court announced that it just learned that the trial had to be continued due to COVID restrictions. The court and Iriarte then engaged in the following exchange:

"THE COURT: . . . [¶] Mr. Iriarte, do you still wish to continue to make your motion to represent yourself?

"[Iriarte]: Yes, sir.

"THE COURT: Really? Now, you know I've already turned you down. Do you understand why?

"Iriarte]: I really don't.

"THE COURT: Okay. You've never been in a trial before, so you don't know what a jury is all about; right?

"[Iriarte]: Nah, I've heard about it.

"THE COURT: You've heard about it.

"[Iriarte]: Yeah.

"THE COURT: Okay. And you don't know anything about the rules, the law; correct?

4

"[Iriarte]: Yes, I do, sir. I understand where you are coming from.

"THE COURT: Well, I'm telling you, certain things you have to do. You know, your education—you went to high school and no education after that.

"[Iriarte]: Well, you've got to—I've been through this court system for four or five years, man.

"THE COURT: You've been through what, man?

"[Iriarte]: I'm not going to argue about this, man.

"THE COURT: No, not argue. Okay. You said you've been through what for four—

"[Iriarte]: This court system for four or five years, man.

"THE COURT: But none of those were in a jury trial, correct? No. [¶] [Iriarte's counsel], do you have any comment on this?

"[Iriarte's counsel]: Your Honor, I am more than able to do this trial. I'm prepared. I'm ready to go when the Court's ready.

"THE COURT: That's your comment? Well, look, this fellow doesn't have the ability to handle a jury trial. He doesn't know how to voir dire, question, education is suspect. You know, he's been in the court system many times, but none of it's been on a jury trial. [¶] And it would be ridiculous for him to represent himself. He'd just be throwing himself down a rabbit hole. I'm not going to let that happen. So his motion to be self-representing is denied.

"[Iriarte]: Are going to deny me my right to represent myself?

"THE COURT: I am not allowing you to represent yourself. Is that clear?

"[Iriarte]: For what reason?

5

"THE COURT:  For the reasons I just gave.

"[Iriarte]:  Wow.

"THE COURT:  Wow.  You're right."

The court then continued the trial to February 22 and addressed some pretrial motions.

## DISCUSSION

## I

## THE *FARETTA* MOTION

### A.  Iriarte's Contentions

Iriarte maintains the trial court improperly denied his *Faretta* motions based on its belief that he was unable to adequately defend himself.  The People counter that it does not matter if the court improperly considered Iriarte's ability to defend himself at trial because the motions were untimely. Iriarte has the better argument.

### B.  Relevant Law and Standard of Review

Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant has a " 'constitutional right to proceed *without* counsel when' [the] defendant 'voluntarily and intelligently elects to do so.' [Citation.]"  (*Indiana v. Edwards* (2008) 554 U.S. 164, 170; see *Faretta, supra*, 422 U.S. at pp. 818-832.)  The "autonomy and dignity interests" that underlie this right are not defeated by "the fact or likelihood that an unskilled, self-represented defendant will perform poorly in conducting his or her own defense . . . ."  (*People v. Mickel* (2016) 2 Cal.5th 181, 206 (*Mickel*).)

A self-represented defendant need not meet the standards of an attorney or even be capable of conducting an "effective defense."  (*Mickel, supra*, 2 Cal.5th at p. 206.)  Indeed, a defendant's right to control his defense includes the right to decide to present no defense, or a defense that has little

6

or no chance of success.  (*Id*. at p. 209.)  "[R]ecognizing a criminal defendant's right to self-representation may result ' "in detriment to the defendant, if not outright unfairness." ' [Citation.]  But that is a cost that we allow defendants the choice of paying, if they can do so knowingly and voluntarily."  (*Id*. at p. 206.)

"When 'a motion to proceed *pro se* is timely interposed, a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so . . . .' " (*People v. Dent* (2003) 30 Cal.4th 213, 217.)  An intelligent waiver requires a general understanding of the risks and disadvantages of forgoing counsel.  (*Faretta, supra*, 422 U.S. at p. 835.)  The defendant "should at least be advised that: self-representation is almost always unwise and that the defense he conducts might be to his detriment; he will have to follow the same rules that govern attorneys; the prosecution will be represented by experienced, professional counsel who will have a significant advantage over him in terms of skill, training, education, experience, and ability; the court may terminate his right to represent himself if he engages in disruptive conduct; and he will lose the right to appeal his case on the grounds of ineffective assistance of counsel."  (*People v. Phillips* (2006) 135 Cal.App.4th 422, 428 (*Phillips*).)[2]

The timeliness of a *Faretta* request is a threshold requirement that prevents a " 'defendant from misusing the [*Faretta*] motion to unjustifiably delay trial or obstruct the orderly administration of justice.' " (*People v. Lynch* (2010) 50 Cal.4th 693, 722.)  The right to self-representation upon a timely and unequivocal request knowingly and intelligently made is absolute.

---

[2]    "There are standard scripts for judges to use in taking *Faretta* waivers, as well as standard *Faretta* waiver forms."  (*People v. Weber* (2013) 217 Cal.App.4th 1041, 1058 (*Weber*).)

If the defendant unequivocally makes such a request, the trial court has no discretion to deny it. (*People v. Halvorsen* (2007) 42 Cal.4th 379, 434 (*Halvorsen*); *Lynch*, at p. 721.) If, however, a *Faretta* request is untimely, the reviewing court must determine whether the trial court abused its discretion in denying the request. (*People v. Hardy* (1992) 2 Cal.4th 86, 194; *People v. Windham* (1977) 19 Cal.3d 121, 128 (*Windham*.) "In exercising its discretion to grant or deny an untimely self-representation request, . . . the trial court should consider, among other factors, 'the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion.' " (*People v. Buenrostro* (2018) 6 Cal.5th 367, 426.)

An erroneous denial of a timely and unequivocal *Faretta* request is reversible per se. (*People v. Becerra* (2016) 63 Cal.4th 511, 520 (*Becerra*).)

C. Analysis

Here, the People contend the court properly denied Iriarte's *Faretta* motions because they were untimely. In California, there is no bright-line test for determining the timeliness of a *Faretta* motion (*People v. Clark* (1992) 3 Cal.4th 41, 99 (*Clark*)); rather, the "reasonable time" requirement is to ensure that a defendant does not "misuse the *Faretta* mandate as a means to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice. . . . When the lateness of the request and even the necessity of a continuance can be reasonably justified the request should be granted. When, on the other hand, a defendant merely seeks to delay the orderly processes of justice, a trial court is not required to grant a request for self-representation without any ability to test the request by a reasonable

8

standard." (*Windham, supra,* 19 Cal.3d at p. 128, fn. 5; *People v. Burton* (1989) 48 Cal.3d 843, 852-853 (*Burton*).)

As the People point out, California courts have recognized untimely requests can be an exception to the right of self-representation and have repeatedly upheld the denial of untimely motions. For example, in *People v. Frierson* (1991) 53 Cal.3d 730, 742, the court held that a self-representation motion made on September 29, 1986, when trial was scheduled for October 1, 1986, was made on "the eve of trial" and was untimely. Other courts reached similar conclusions when considering motions too close to trial. (See *People v. Valdez* (2004) 32 Cal.4th 73, 102 [Faretta motion made "moments before jury selection was set to begin" deemed untimely]; *People v. Horton* (1995) 11 Cal.4th 1068, 1110 [self-representation motion made on the date scheduled for trial untimely]; *People v. Howze* (2001) 85 Cal.App.4th 1380, 1397 [motion made immediately before or on day of trial is generally considered untimely]; *Clark, supra,* 3 Cal.4th at pp. 99-100 [case had been continued day to day after August 10 "in the expectation that the motions would be concluded and jury selection set to begin at any time," and hence the defendant's August 13 motion was "in effect the eve of trial" and untimely].)

Although this list of cases shows that a trial court may properly deny an untimely *Faretta* motion, none of the cases create a bright-line rule. In other words, the cases relied on by the People do not stand for the proposition that a *Faretta* request made on the day of trial is always untimely and should be denied. Further, these cases are not particularly instructive here, where it does not appear, on the record before us, that the trial court denied the *Faretta* motions because they were untimely.

The People emphasize that the trial court here recognized that Iriarte's motion was made "the day of trial" and was "dilatory." As such, they insist

9

the court denied the *Faretta* motion because it was untimely. However, looking at the entire exchange between the court and Iriarte when he first requested to represent himself, the court's comments on which the People rely seem to be little more than an afterthought. Indeed, when Iriarte first requested to represent himself, the court's immediate response was: "No. You're not going to represent yourself, sir." The court then proceeded to question Iriarte's knowledge of the law, trial experience, familiarity with the jury instructions, and his educational background before determining Iriarte did not "have the ability" to represent himself. After making that conclusion, the court added, "Plus, it's the day of trial, and I find it dilatory."

Thus, in response to Iriarte's request to represent himself, the trial court spent the lion's share of the time questioning Iriarte's ability to represent himself before noting that it believed the request was "dilatory." Further, we find the choice of the word "dilatory" odd on this record. "Dilatory" is defined as "tending or intended to cause delay" or "characterized by procrastination; tardy." (Merriam-Webster's Collegiate Dict. (11th ed. 2007) p. 350, col. 1.) Although Iriarte did not make the request to represent himself until the day of trial, there is no indication in the record that he did so to delay the proceedings. He did not ask for a continuance or otherwise request any additional time to prepare. Indeed, his request was in response to the indication that there might be a delay in the trial because his attorney possibly was infected with COVID. Therefore, the record suggests that Iriarte initially asked to represent himself to prevent delay, not to cause it.[3]

---

[3]    The People also argue that Iriarte's initial request to represent himself was not unequivocal but conditional. He indicated he would represent himself only if his attorney tested positive for COVID and the trial needed to be continued. Although we do not disagree with the People on this point, Iriarte's second request to represent himself was clearly unequivocal.

However, we need not determine whether the trial court actually denied Iriarte's initial request to represent himself on timeliness grounds because Iriarte unequivocally made a second request to represent himself after the court informed the parties that the trial would be delayed because of COVID protocols. Remarkably, it was the trial court who further engaged Iriarte on this issue by asking him if he "still wish[ed] to continue to make [his] motion to represent [himself]?" Iriarte clearly indicated that he did. In response the court merely expressed disbelief ("Really?"), noting that it had already "turned [Iriarte] down." The court then again questioned Iriarte's ability to represent himself, emphasizing his lack of education and trial experience. In ultimately denying Iriarte's second *Faretta* motion, the court reasoned:

> "Well, look, this fellow doesn't have the ability to handle a jury trial. He doesn't know how to voir dire, question, education is suspect. You know, he's been in the court system many times, but not of it's been on a jury trial. [¶] And it would be ridiculous for him to represent himself. He'd just be throwing himself down a rabbit hole. I'm not going to let that happen. So his motion to be self-representing is denied."

Thus, the court explicitly explained that he was denying Iriarte's request to represent himself because it concluded Iriarte lacked the ability to represent himself. There was no discussion of the motion being untimely. The court did not ask Iriarte if he needed additional time to prepare, and there is no indication in the record that Iriarte made his request to delay the trial. (See *Windham*, *supra*, 19 Cal.3d at p. 128, fn. 5; *Burton*, *supra*, 48 Cal.3d at pp. 852-853.) Moreover, at the time the court engaged Iriarte on his second request to represent himself, it was undisputed that the trial would need to be delayed because of COVID protocols. And the trial was continued for almost two weeks. Against this backdrop, we find no support for the

11

People's argument that the trial court denied Iriarte's second *Faretta* motion on the grounds it was untimely.

In the instant action, we find overwhelming support for Iriarte's claim that the trial court violated his Sixth Amendment right to represent himself. In denying Iriarte's second *Faretta* motion, the court focused exclusively on Iriarte's ability to represent himself. That was clear error. (See *Mickel, supra*, 2 Cal.5th at p. 206.) The court did not ascertain whether Iriarte was making his request knowingly and intelligently. (See *Halvorsen, supra*, 42 Cal.4th at p. 433.) Nor did the court offer Iriarte the long established advisements commonly provided to defendants when they request to self-represent (see *Phillips, supra*, 135 Cal.App.4th at p. 428) or use any of the standard scripts or forms for *Faretta* waivers (*Weber, supra*, 217 Cal.App.4th at p. 1058.) We therefore must reverse the judgment.[4] (*Becerra, supra*, 63 Cal.4th at p. 520.)

---

[4] The People reference a third *Faretta* motion that Iriarte made immediately before closing arguments. Because we find error in the court's handling of the second *Faretta* motion, we do not discuss the third motion.

12

DISPOSTION

The judgment is reversed.

HUFFMAN, Acting P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.